# CHARLESTON

## POCCARDI v. PUBLIC SERVICE COMMISSION.

### Submitted January 13, 1915.   Decided January 26, 1915.

1. MASTER AND SERVANT—*Death of Servant—Workmens' Compensation Act—Public Service Commission—Supervision of Court.*

   Under its supervisory power over the Public Service Commission, respecting its administration of the Workmen's Compensation Act, this court takes cognizance of questions of law only.   (p. 544).

2. SAME—*Workmen's Compensation Act—Proceedings of Public Service Commission—Review by Court.*

   In the absence of conflict in the evidence adduced to show a claimant's right to participation in the Workmen's Compensation Fund, the Commission is regarded, in this court, as a demurrant to the evidence, and, if the evidence would sustain a verdict of a jury in favor of the claimant, the claim is regarded as sufficiently proved. (p. 544).

3. SAME—*Workmen's Compensation Act—Public Service Commission—Procedure—Evidence.*

   It is the duty of the Commission, under such circumstances, to give the claimant the benefit of inferences arising in his favor from the facts proved, in the absence of direct evidence.   (p. 544).

4. SAME—*Injury to Servant—Workmen's Compensation Act—"Accident or Untoward Event."*

   A rupture caused by a strain while at work is an accident or untoward event, arising in the course of employment, and compensable under the Workmen's Compensation Act.   (p. 544).

5. SAME—*Injury to Servant—Workmen's Compensation Act—Sufficiency of Evidence.*

   Proof of apparent previous good health, a heavy and unusual lift in the course of work, discovery of rupture on the second day thereafter, death from surgical operation for relief thereof and opinion of the operating surgeon that the rupture was caused by the lifting, is sufficient to establish accidental injury in the course of employment, within the meaning of said act.   (p. 548).

   (ROBINSON, PRESIDENT, dissenting.)

Petition by Gaetano Poccardi, Royal Consul of Italy, on behalf of the widow of Cataldo Greco, against the Public Service Commission.

*Ordered that claim presented be paid.*

*Joseph Henderson* and *Francis Rawle,* for petitioner.

*A. A. Lilly,* Attorney General and *Frank Lively,* Assistant Attorney General, for respondent.

POFFENBARGER, JUDGE:

Gaetano Poccardi, Royal Consul of Italy, on behalf of the widow of Cataldo Greco, an Italian subject, and his sole dependent, complains of an order of the Public Service Commission, rejecting her claim against the Workmen's Compensation Fund.

Though a surgical operation for strangulated hernia precipitated Greco's death, the legally proximate cause thereof was the hernia. But, in the opinion of the Commission, the hernia did not result from accidental injury.

Just before his death, Greco was an employee of the Phillips Sheet and Tin Plate Company at Weirton, W. Va. On the 10th day of April, 1914, he and some of his fellow workmen lifted a heavy iron pipe called a "Jim Pole." He worked the next day, but illness required him to go to bed on Sunday, the second day after the exertion to which reference has been made, where he remained, until April 14th, 1914, without attention from a physician. On that day, Dr. L. A. Whittaker was called. Finding his condition serious, the doctor had him removed to a hospital on the 15th, performed the operation on the 16th and the patient died on the 20th. A post mortem examination, made on the day of the death, revealed dilatation of the right ventricle of the heart as the immediate cause of death, the wound showing no unfavorable indications. Weakness of the heart had been observed while he was on the operating table.

Loney Marino, a fellow-workman, says Greco, after carrying the "Jim Pole" to the machine shop, had thrown his hands back to his hips as though he had injured himself. The man who had charge of the men engaged in the removal of the pipe and the labor boss at the plant say neither of them heard any complaint of injury. A verified certificate of the chief clerk of the company for which Greco had worked says he "strained himself" in carrying the pipe, and "First complained of his injury in machine shop." It further says

"to the best of" affiant's "knowledge," the injury causing death was sustained in the course of the deceased's employment. A report of the attending physician says the hernia and strangulation were "brought on by lifting jim pipe in mill, over working." He further reports specifically that the disability was due to the accident previously mentioned by him, and that Greco had not been maimed or crippled by previous injury.

After the claim had been rejected, the applicant filed a letter from Dr. Whittaker, directed generally to whom it may concern, saying Greco had been injured in the course of his employment. He further said that, at the time of his investigation, he had understood him to say, through an interpreter, that he had been ruptured previously, but was now assured by the interpreter that he had misunderstood him. This seems to have been considered as upon an application to re-open or re-hear the case. The Commission was notified that several persons who had known the decedent were ready to testify to his previous good health. A joint affidavit of these persons to the fact and also one made by three other persons to the effect that he had complained of abdominal discomfort immediately after the lifting of the pipe seem to have been taken, but, if so, they were not filed with the Commission at any time, nor in this court. What purport to be copies of such affidavits appear only in the brief of counsel for the petitioner. If such affidavits exist, it is not perceived how they can be considered here, they never having been filed in the proceeding in any manner or at any stage thereof.

Meager development of the merits of the case before the Commission justifies, in the opinion of some of the members of the court, refusal of the prayer of the petitioner. No doubt the operating surgeon could have determined whether the rupture was an old one or the result of disease, or a fresh wound occasioned by a strain. As to the appearance of the wound, no inquiry seems to have been propounded to him, wherefore the evidence lacks detail and particularity which no doubt could have been supplied. One or more of the members of the court entertain the view that the evidence is defective in form and character, justifying rejection, on the

ground of failure on the part of the applicant to develope the facts. A further suggestion is that the finding of the Commission is of equal dignity with the verdict of a jury and cannot be disturbed unless plainly wrong.

The action of the Commission is final and irreviewable except as to matters "going to the basis of the claimant's right." Code, ch. 15P, sec. 43, Serial sec. 699. As to such matters, its function is administrative, only quasi-judicial, and the supervisory power of this court over its action respecting the right of the claimant is under its original jurisdiction by mandamus. De Constantin v. Pub. Ser. Com., 75 W. Va. 32, 83 S. E. 88. In this respect, our statute accords with the English compensation act and those of several of the states, limiting the power of review to questions of law. Gane v. Colliery Co., 2 B. W. C. C. 42; Turner v. Bell and Sons, 4 B. W. C. C. 63; Moss & Co. v. Akers, 4 B. W. C. C. 294; Illinois Act, sec. 19; Iowa Act, sec. 34; Massachusetts Act, pt. 3, secs. 10 and 11; Michigan Act, Pt. 3, secs. 11, 12 and 13; Minnesota Act, secs. 22 and 30; Bradbury's Work, Com., ch. 16, pp. 892 et seq.

Under the English act, the courts regard the employer, whose place, under our statute, the Commission takes, as a demurrant to the evidence, when the issue is one of mere sufficiency thereof. If the evidence adduced or the facts found or disclosed, are uncontradicted and would sustain a verdict of a jury in favor of the claimant, there is liability as a matter of law and legal duty to pay the claim arieses. Mitchell v. Glamorgan Coal Co., 9 B. W. C. C. 16; Wright v. Kerrigan, 4 B. W. C. C. 432; Owners of Steamship v. Rice, 4 B. W. C. C. 298. What rule would govern in a case of conflicting evidence, it is unnecessary to say, since the evidence adduced here is free from conflict. All of it points in the same direction, and the only question is the weight to which inferences arising from the facts are entitled.

The written opinion adopted by the Commission rests largely upon the sound legal proposition that evidence giving rise to inferences consistent with the theory of liability and inconsistent therewith, in equal degree, is insufficient. An illustration of such evidence is found in Hawkins v. Coal Co., 4 B. W. C. C. 178. A workman, whose heart was shown to

have been in bad condition, collapsed, while at work, and died of angina pectoris. The court held the two facts, collapse while at work and disease of the heart, rendered the cause of death uncertain, the inferences arising being equally consistent with the theory of death from accident and death from disease. A collier having highly diseased arteries, threatening apoplexy at any time and under any conditions, was attacked with apoplexy while at work, and died. Here likewise the court held the evidence insufficient. *Barnabas* v. *Colliery Co.*, 3 B. W. C. C. 216. There were like holdings in the case of a man who had undergone two successive surgical operations, amputation of a finger injured while at work and another for a diseased tooth, and died from the effect of the anaesthetics, *Charles* v. *Walker, Limited*, 2 B. W. C. C. 5; and a sailor found dead in the water in the morning, after having gone on deck, late at night, to get fresh air. *Davis* v. *Plymouth Colliery*, 3 B. W. C. C. 514. In each of these cases, directly contradictory inferences arose from facts proven.

In the absence of such contradiction, however, the probability arising from the facts disclosed governs and concludes. A night workman who had gone to his work, a mile or more distant, in the evening, sound and well, came back in the morning, at the usual hour, in his working clothes and with a finger crushed and bleeding, unwashed and wrapped in a rag. Continuing his work, blood poison set in and he died. The county judge held his widow had not proved a case, and said the accident might have occurred in the walk from the colliery. But the appellate court, reversing, said "The workman was engaged in work at which accidents do happen, and the probability, therefore, is that the accident happened at the time when he was so engaged, rather than at a time when, in the ordinary course of life, such accidents do not happen. There is nothing to suggest here that the accident happened on the way home." *Mitchell* v. *Coal Co.* cited. A man whose duty it was to lift coffins went to work apparently well and, on returning, complained of having been hurt and had marks on his side and chest and a swollen leg. He died about a week later of pneumonia superinduced by the injury. There was no proof as to how he was injured except a statement to his physician that he had "met with an accident by moving a

coffin.''   The court, in dismissing the appeal, said: ''So far, we have at any rate, the fact that one coffin went out, and it would be the duty of the deceased to assist in removing it, and the doctor's evidence is consistent with the fact that something like a coffin fell upon him.   *   *   *   *   This man, whose employment was lifting coffins, went out well, and came home, as we have heard, with marks and injuries upon him.   In these circumstances, it strikes me the inferences drawn in the Glamorgan case may be drawn here.   In that case the man's finger might have been crushed in many ways.''   *Wright* v. *Kerrigan,* cited.

This principle applies as well to the ascertainment of the times and causes of internal injuries, such as ruptures. Here, as in many other instances in the administration of the laws, the right is not susceptible of complete and certain demonstration, and probability, which, ex vi termini, is evidence, must take its place as inconclusive, but, nevertheless dependable, proof.   In one of the most notable English cases decided. apparently by the House of Lords, the decision of the county judge, denying right of compensation for a rupture, affirmed by the Court of Appeal, was reversed and the case remanded for ascertainment of the amount of compensation. *Fenton* v. *Thorley & Co.,* 5 W. C. C. 1.   In that case, Lord Lindley said: ''The personal injury was the rupture; the cause of it was the unintended and unexpected resistance of the wheel to the force applied to it.   *   *   *   *   The proximate cause may be an internal strain.''   In *Fulford* v. *Coal and Ballast Co.,* 1 B. W. C. C. 222, compensation for injury by rupture was awarded to a man who had a previously existing rupture, on the theory that it had been so increased by a strain as to incapacitate him.   The court said: ''I think, regarding the case solely from the medical aspect, the injury could not have been an untoward event not expected.   On the other hand, the man had worked in the chalk quarry for six months and had dug out lumps of chalk quite as large as the one in question without injury, notwithstanding the strain he was suffering from, and, as far as he or any one without medical or surgical knowledge was concerned, the injury was occasioned by means of a mishap or untoward event not expected or designed.''   In *Scales* v. *West Norfolk etc. Co.,*

Work. Com. Rep. 165, it appeared the deceased had been ruptured three or four years before the strangulation causing his death, but the court held a strain or over-exertion in the course of employment was the proximate cause of death and an accident within the meaning of the act. · *Brown* v. *Kemp, Id.* 595, was a similar case and, in it, compensation was awarded.

Responding to medical criticism of the theory of rupture by strain or exertion, the Washington Industrial Insurance Commission has adopted rules requiring proof, in cases of claims predicated on hernia, (1) that its origin was recent, (2) that it was accompanied by pain, (3) that it was immediately preceded by accidental strain in hazardous employment, and (4) that · it did not previously exist. Similar rules ˙ have been adopted by the Commission. Notwithstanding the criticism calling forth these rules, they impliedly admit possibility and probability of rupture from a strain, when the strain and the rupture are in close relation. So does an article by the attorney for the Michigan compensation board, published in The National Compensation Journal, brought to our attention by the brief for the Commission. Both the rules and the thesis admit the English proposition that an internal injury resulting from a strain while at work is an accident within the meaning of the act, and their limitations or restrictions upon proof of the fact have not been judicially approved.

Under the decisions to which reference has been made, the circumstances stated, if sufficiently proved, make out a *prima facie* case of right to participation. Greco had worked for · his employer more than two months. There is no proof of any antecedent infirmity of any kind on his part. In his employment, he was subjected to unusual physical exertion on Friday. He took to his bed on Sunday and his ailment proved to be hernia. The surgeon who operated upon him and saw the rupture, had no personal knowledge of the exertion, but was informed as to that fact. If a competent physician and surgeon, he was likely able to tell, from his inspection, whether the rupture was of recent origin. Having inspected it and knowing from others what the patient had previously done, he gave it, as his opinion, that the injury had resulted from strain in lifting the pipe. Support of his

conclusion is found in the known facts, previous ability to work, the exertion and the rupture.    Failure of the injury to cause serious discomfort, until the second day after its occurrence, does not negative the inference arising from these facts.    "Sometimes there is complete absence of pain and tenderness in the hernia itself."  Ency. Britanica.  The article brought to our attention in the brief says traumatic hernia completely developes immediately or in a day or two after the blow.    Common sense suggests that a rupture from a strain might develope more slowly than one caused by a blow.

The case has been very poorly developed.    No effort by the applicant strictly to prove the claim was made, until after its rejection.    He relied upon the result of the Commission's investigation and apparently was not advised of the supposed insufficiency of the evidence, before the finding and announcement of the result.    Then, although an informal re-hearing seems to have been allowed, no new evidence of consequence was filed.    The suggestion here of additional proof is utterly futile.    However, the facts disclosed by the record establish the claim.

Accordingly an order will be entered, requiring the Commission to ascertain the amount of the indemnity and cause it to be paid.

*Ordered that claim presented be paid.*

Robinson, President *(dissenting):*

In view of the hearsay and unverified character of the evidence before the Commission when it passed on this claim, and the insufficient force thereof, lacking as it does any direct and certain probative force, the finding should not be disturbed.