SOUTHWESTERN SURETY INS. CO. v.
OWENS et al. (No. 7442.)

(Court of Civil Appeals of Texas. Galveston.
Oct. 25, 1917. Rehearing Denied
Nov. 22, 1917.)

1. MASTER AND SERVANT ⬉405(4) — WORK-
MEN'S COMPENSATION—CAUSE OF INJURY—
EVIDENCE.

In a suit under the Workmen's Compensa-
tion Act (Vernon's Sayles' Ann. Civ. St. 1914,
art. 5246h et seq.), evidence held to show that
the lifting of a can of paint caused the bursting
of a blood vessel and the death of an employé.

2. MASTER AND SERVANT ⬉372—WORKMEN'S
COMPENSATION ACT—"ACCIDENTAL INJURY."

Where lifting of a can of paint caused a
blood vessel in a servant's lungs to burst, there
was an "accidental injury" within the mean-
ing of the Workmen's Compensation Act, and
it is immaterial that it had burst before, but had
healed over, and might burst again.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Accident.]

3. EVIDENCE ⬉126(1) — STATEMENTS OF
CAUSE OF INJURY—PERSONAL INJURY.

In a suit under the Workmen's Compensa-
tion Act, where witness came upon deceased,
who had blood on his face, was spitting blood,
and in great pain, and a large can of paint was
at his feet, a statement of the deceased that
he had "busted something lifting that can of
paint" was admissible as part of the res gestæ.

4. TRIAL ⬉89 — STRIKING OUT EVIDENCE —
REFRESHING MEMORY—PRIOR TESTIMONY.

The court did not err in refusing to strike
certain testimony where witness had refreshed
his memory from an affidavit he had made at
the time, although having no independent recol-
lection of the matter, but knew that the state-
ment in the affidavit was true, and although he
had testified differently on a former trial; the
contradictory statements being before the jury.

5. MASTER AND SERVANT ⬉408—WORKMEN'S
COMPENSATION ACT—ACCIDENTAL INJURY—
QUESTION OF LAW.

Whether a hemorrhage and death from the
bursting of a blood vessel from lifting a can of
paint was an "accidental injury" within the
meaning of the Workmen's Compensation Act is
a question of law for the court.

Appeal from District Court, Harris Coun-
ty; J. D. Harvey, Judge.

Proceedings under the Workmen's Compen-
sation Act by Nettie Owens and minor chil-
dren to obtain compensation for the death
of Will. L. Owens, husband and father, op-
posed 'by the Randolph Paint Company, the
employer, and the Southwestern Surety In-
surance Company. Compensation was award-
ed in the sum of $2,957.88, and the Insurance
Company appeals. Affirmed.

Andrews, Streetman, Burns & Logue, of
Houston, for appellant. Cole & Cole and
John R. Burkett, all of Houston, for appel-
lees.

PLEASANTS, C. J. This suit was brought
by appellees, the widow and minor children
of Will L. Owens, deceased, against the ap-
pellant, to recover compensation under the
Texas Workmen's Compensation Act for loss
sustained by them in the death of said Will
L. Owens from injuries received by him in
the course of his employment by the Ran-

dolph Paint Company, a subscriber within
the purview of said Compensation Act.

The allegations of the petition setting out
the circumstances and manner of the injury
to said Owens, which resulted in his death,
are as follows:

"That at the time the said Will L. Owens sus-
tained said injury in the course of his employ-
ment he was engaged in carrying paint from the
Randolph Paint Company's elevator on the sec-
ond or third story of the building of said Ran-
dolph Paint Company for a distance of some
20 to 30 feet, and then lifting said paint and
stacking it; that the paint was in cans some
100 or more pounds in weight, and was very
heavy and hard to carry and to lift; that the
work the said Will L. Owens was doing on said
date was work which was usually and custom-
arily discharged by two employés, for the reason
that the paint was so heavy that one man was
not usually required to perform the same alone,
but that on the occasion of the injury of the
said Will L. Owens, resulting in his death, the
said Randolph Paint Company was requiring
the said Will L. Owens to work in a hurry, for
the reason that a car of paint had been unload-
ed on the sidewalk, which it was necessary to
take off of the sidewalk so as to clear the same
before closing the Randolph Paint Company's
place of business; that the Randolph Paint
Company's other men who would have been re-
quired to assist the said Will L. Owens were
away at the time, and the said Will L. Owens
was thereupon required to do the work of two
men, and that while the said Will L. Owens was
so engaged in lifting said paint aforesaid, to a
distance of some 5 or 5½ feet in height, so as
to place it on top of a stack of paint which had
already been started, and while the said Will L.
Owens was under great strain, in carrying said
paint for a distance of some 30 feet and lifting
the same thereupon to a distance of 5½ feet, he
overexerted and strained himself in such a
manner as to cause a blood vessel to burst in
and upon his lung, resulting in a hemorrhage,
and by reason thereof the said Will L. Owens
was on and after said date, to wit, October 23,
1914, and for a period of approximately six
weeks immediately subsequent thereto, confined
to his bed, and that by reason of said injury
and of said hemorrhage the said Will L. Owens
was never thereafter able to arise from his bed,
and he thereafter died on, to wit, December 10,
1914, as the immediate, direct, and proximate
result of the injury sustained by him as afore-
said.

"Plaintiffs allege that the bursting of said
blood vessel as result of said overexertion or
strain, as aforesaid, was an entirely unlooked
for mishap, or an untoward event, which was
not expected or designed, and that by reason
thereof the said Will L. Owens sustained an ac-
cident, or personal injury, in the course of his
employment, for which the defendant is liable
as hereinafter stated; said injury occurred at
the Randolph Paint Company's place of business
in the city of Houston, Harris county, Tex.;
that at all dates and times prior to said injury
the said Will L. Owens was a strong, healthy,
and able-bodied man, with the exception that in
April, 1914, preceding the injury hereinabove
described, he had sustained a strain in lifting
a piano, from which he had entirely recovered
at the time of the injury resulting in his death,
and that the direct, immediate, and proximate
cause of the death of the said Will L. Owens
was the injury sustained by him as set forth
herein while in the course of his employment
with the Randolph Paint Company. Plaintiffs
show the court that, if the said Will L. Owens
had not become entirely cured from the effect
of said strain in lifting the piano, or if it be

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

found that the said Will L. Owens' blood vessels were in an impaired condition to any extent by reason of lifting said piano, or otherwise, then in any event plaintiffs show the court that the strain which the said Will L. Owens received in lifting said paint as aforesaid was a direct proximate contributing cause to the bursting of said blood vessel, and such a proximate contributing cause to the bursting thereof that without such strain as aforesaid the injury would not have occurred."

Defendant Southwestern Surety Insurance Company by its amended original answer, upon which the cause was tried, demurred to the petition of plaintiffs, and denied the averments therein contained, but specially stating that:

"If there is any liability at all, it admits that such liability is legally and correctly measured by the matured compensation payments ascertained upon the basis specified in the Compensation Act plus the present value of the unmatured payments discounted at 6 per cent. true discount."

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs for the sum of $2,957.88.

The first assignment of error complains of the refusal of the trial court to instruct the jury, as requested by defendant, to return a verdict in its favor. Under this assignment appellant contends that the undisputed evidence shows that Will Owens did not meet his death under such circumstances as to give rise to any liability under the Texas Workmen's Compensation Act upon which the alleged cause of action rests. The grounds upon which this contention is based are that the evidence wholly fails to show that Will Owens suffered an accidental injury in the course of his employment within the meaning and scope of said act, and died as a result of such injury; there being nothing unusual, unexpected, or fortuitous in the circumstances in which the hemorrhage occurred which resulted in the death of said Owens.

The evidence shows that Will Owens was an employé of the Randolph Paint Company, a "subscriber" under the provisions of the act above mentioned, and that the hemorrhage which caused his death occurred while he was engaged in performing the duties of his employment. Appellant was the insurer of the employés of the Randolph Paint Company under the provisions of said act, and is liable for the compensation to appellees provided for in said act if the hemorrhage which resulted in the death of said Owens was caused by an accidental injury. The circumstances in which the hemorrhage occurred are thus detailed by Mr. Hinton, the manager of Randolph Paint Company:

"We had an employé by the name of Will L. Owens for several years. He worked for us in the capacity of shipping and receiving clerk. He came to work for the company shortly after I went with it. He was working for the company on October 23, 1914. I know something in regard to Owens receiving an injury while in our employ down there. The injury occurred the latter part of October. I remember the last day that Will worked for us down there. He was doing several things that day.

In the evening he was stacking some paint. That was part of his duties. I do not know what time, on the last day he worked there, October 23, 1914, Will began stacking this paint. He was stacking it on the second floor. In the course of my duties I did go up there off and on during the afternoon. I recall, off and on, during that afternoon, seeing Will stacking paint up there at different times. I think I was away during the afternoon, during the greater part of the afternoon, but when I was up there, the times that I was there, I remember seeing Will at work there, stacking the paint. The paint that Will was stacking was received by him from the turn of the elevator. It would be brought from the ground floor to the turn of the elevator. We had received a consignment or shipment of paint that day that had to be stacked upstairs. We were getting this paint from the sidewalk before we took it upstairs. The reason for the rush or hurry that afternoon was simply that we closed at 6 o'clock, and it was the purpose to get this paint out of the way before closing time. I saw Will Owens that afternoon when he was unable to stack paint. I would say that it was right at six o'clock, maybe 15 minutes of 6 o'clock. I went upstairs at that time. I saw Will Owens when I got there. Will was leaning against a pillar or banisters when I got there. There was just a short turn in the stairs, and a rail about two feet long, and there is a pillar at the turn, at the end of it. I saw symptoms of Will's being in pain. It was very evident, very pronounced. He had been bleeding from the mouth, and he was gasping somewhat for breath. He was spitting blood, and there was blood on his face, and he was gasping for breath. When I got there where he was standing there was a five-gallon kit of outside white paint near where he was standing. The weight of that kit is approximately 100 pounds. He was stacking this paint five high. When I got there there were four actually up on the stack in front of Will, four already up. I would say that these four were 72 or 75 inches high. The fifth one had to go up on top of that. I said that four of these boxes were already up when I got there. There was another box to take the place on top of the four when I got there. It was right at Will's feet. This kit or box of paint at Will's feet was not at the place where he would receive it. It would be approximately 12 or 15 feet from the place where he would receive it, right at the turn of the elevator. Will would carry the paint from where he received it at the turn of the elevator to this place to get it up on top of the stack of paint. He would carry it in his hands if he wanted to, but there was a little truck there, but he never used it. * * * When I got there, these four kits of paint were stacked there, and this kit was the same absolutely as the other four, outside white paint, weighing approximately 100 pounds. When I got there, I saw that Will had blood coming out of his mouth, and was gasping for breath, and had blood over his face. Judging from these symptoms, regardless of anything Will said, I know that he was in pain. I would not be able to state definitely how long before this I had seen Will, but I do know he was lifting paint there all that afternoon. Will said something to me there. He said he 'had done busted something lifting that can of paint.' After he said that I helped Owens to a seat, and he seemed to be in a pretty bad shape. He did not do any more work that day. As soon as he was able he was taken home. * * * I do not think I ever saw him at the store after that. I saw him at his home just before he died. He died within a month or six weeks after that. Prior to this occurrence Will L. Owens suffered a little injury in the spring of the year, lifting a piano at the church. He was laid off only a very short time then. He came back to work after that. There was not any difference

in the way he worked after that and before. With the exception of that time he laid off in April, he had never lost any time on account of being sick."

In stacking boxes of paint of the size of those stacked by Will Owens on the occasion in question in stacks of four or five boxes two men were generally employed, but on this occasion Owens had no one to assist him in the work.

The evidence shows that in April, 1914, Will Owens was injured while lifting a piano, and as a result of such injury suffered for a week or ten days from hemorrhage from the lungs or chest. He recovered from the effect of that injury in a short time, went back to his work, and performed the duties of his employment as he had theretofore done, without giving any indication of suffering from the effects of his previous injury.

Dr. Neuhaus, a witness for plaintiff, after stating his expert opinion, from the statements made to him of the manner in which Owens was injured when lifting the piano in April, 1914, that the hemorrhage which followed such injury was due to the rupture of a blood vessel or pulmonary vein in the lungs, further testified:

"That vein will heal up, a little scar tissue which is ordinarily in the lung, not as tough as it would be on the outside of the body. It is kind of a' spider web tissue that does not stretch that heals over the vein, and the blood would be held in. Supposing that the patient in question would go to October 23, 1914, and on that day he is lifting heavy cases of paint, weighing 90 to 95 pounds, for a distance of 4½ to 5½ feet from the floor, and coincident with this lifting blood gushed from him again, without any intervening symptoms, like counsel has detailed to me, the most probable diagnosis as to the cause of this return of this hemorrhage would be this little blood vessel burst again which burst originally; that the scarification caused this blood vessel to be weak, and it burst again. Assuming that this patient gradually declines until December 10th, this injury being on October 23d, and during that period he is troubled with fever, say·the same symptoms followed the October 23d injury as in April, and he gradually declined in strength and weight and died on December 10th, I would say that an infection of the lacerated place in the lungs where the bleeding took place could cause that. * * *

"Assuming that a man has none of the symptoms of consumption that I have detailed, and yet assuming that there might be a possibility that they were latent in the patient's system, as to whether lifting, resulting in a trauma, in a bursting of a pulmonary vein, could light up and make an open field for the 'bugs' as we call it, and accelerate the disease, I will say that, where such cases have been followed up and an examination made, they generally found that the tuberculosis was not caused by such heavy lifting. They find it to be surgical pneumonia in nine cases out of ten. Surgical pneumonia is caused by strain or exertion or crushing. The germs enter or were already there. Many persons have germs in their mouth or nasal cavity, and then when the soil is rendered fertile the germs develop. Surgical pneumonia is never developed by germs alone; it takes a trauma to bring it into life."

Dr. J. G. Boyd, a witness for plaintiffs, testified as an expert to the same effect as Dr. Neuhaus.

[1] Our conclusions of fact from the evidence are that Will Owens ruptured a blood vessel in his lungs by lifting one of the boxes of paint he was stacking on October 23, 1914, and that he died from infection or traumatic pneumonia which resulted from such rupture.

[2] We think an injury of this character received in the manner and circumstances in which Will Owens was injured must be regarded as "an accidental injury suffered in the course of his employment."

The first section of the Texas Workmen's Compensation Act, which is now article 5246h of Vernon's Sayles' Civil Statutes 1914, refers to and deals with "actions to recover damages for personal injuries sustained by an employé in the course of his employment or from death resulting from personal injuries so sustained." The only portion of the act which designates the injuries to which the act applies as accidental is the emergency clause, which declares the aim of the act to be the protection by adequate law of the rights of employés injured in "industrial accidents" and the beneficiaries of such employés as may be killed in such accidents. It is, we think, clear that the injuries referred to in the act are designated accidents only as contradistinguished from intentional injuries (Middleton v. Texas P. & L. Co. [Sup.] 185 S. W. 556), and it cannot be contended upon any sound theory that, if Will Owens in lifting a heavy box of paint ruptured a blood vessel, such injury was not an accident as that term is used in the act before mentioned. The English Workmen's Compensation Act provides:

"If in any employment personal injury by accident arising out of and in the course of the employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation in accordance with the first schedule to this act."

In the case of Clover, Clayton & Co. v. Hughes, App. Cas. 242, in which suit was brought under said act to recover compensation for the death of a workman, who, while "suffering from an aneurism in so advanced a state of disease that it might have burst at any time, was tightening a nut with a spanner, when the strain, quite ordinary in this quite ordinary work, ruptured the aneurism, and he died." It was held that plaintiff was entitled to compensation. In the course of the opinion Lord Loreburn used this language:

."The first question here is whether or not the learned judge was entitled to regard the rupture as an 'accident' within the meaning of this act. In my opinion, he was so entitled. Certainly it was an 'untoward event.' It' was not designed. It was unexpected in what seems to me the relevant sense, namely, that a sensible man, who knew the nature of the work, would not have expected it. I cannot agree with the argument presented to your Lordships that you are to ask whether a doctor acquainted with the man's condition would have expected it. Were that the right view, then it would not be an accident if a man very liable to faint-

ing fits fell in a faint from a ladder and hurt himself. No doubt, the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine, for example. But it may be merely from the man's own miscalculation, such as tripping and falling. Or it may be due both to internal and external conditions, as if a seaman were to faint in the rigging and tumble into the sea. I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight, it would be properly described as an accident. So I think rupturing an aneurism when tightening a nut with a spanner may be regarded as an accident. It cannot be disputed that the fatal injury was in this case due to this accident,- the rupture of the aneurism under the strain."

Further in the opinion the same judge uses the following language:

"I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the county court judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of his health had to be considered, there must be some standard of health, varying, I suppose, with men of different ages. An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

It seems to us that the reasoning in this opinion is unanswerable, and applies with equal force to our statute as to the statute under construction in the case cited. Statutes similar to ours have been construed by the courts of a number of our states, and the effect of these decisions upon the point we are considering is thus stated in Corpus Juris under title Workmen's Compensation Acts, p. 64, § 54:

"The word 'accident,' as used in a compensation act, requiring the injury compensated for to be 'by accident,' is held to be employed in its ordinary sense as meaning an unlooked-for and untoward event which is not expected or designed; and the term 'accidental' means something unusual, unexpected, and undesigned."

Some of the cases cited in support of this text are Southwestern Surety Ins. Co. v. Pillsbury, 172 Cal. 768, 158 Pac. 762; In re Madden, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; Fisher's Case, 220 Mass. 581, 108 N. E. 361; Voorhees v. Smith, Schoonmaker Co., 86 N. J. Law, 500, 92 Atl. 280; Poccardi v. Public Service Com., 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299.

Appellant's first assignment of error cannot be sustained.

[3] The second assignment predicates error upon the ruling of the court admitting in evidence, over defendant's objection, the testimony of the witness Hinton that Will Owens stated to him that he "had busted something lifting that can of paint." The objection made to this testimony was that it was hearsay, and not res gestæ. The trial court did not err in overruling the objection and admitting the testimony. The evidence, which we have before set out, excluding the statement of the deceased to Hinton, shows that the hemorrhage occurred while Will Owens was engaged in lifting heavy boxes of paint, that he had previously ruptured a blood vessel in his lungs which had healed, but in the opinion of medical experts who testified in the case the blood vessel was left in such condition from the former injury as to render it more liable to break from a strain of any kind, and the lifting of the paint was the probable cause of the second rupture and hemorrhage. The statement was made at the place the accident occurred, and, it is a fair inference from all the circumstances shown by the evidence, within a very few minutes after the occurrence. We think the statement was admissible in evidence as a part of the res gestæ. City of Galveston v. Barbour et al., 62 Tex. 172, 50 Am. Rep. 519; Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Cromeenes v. Railway Co., 37 Utah, 475, 109 Pac. 10, Ann. Cas. 1912C, 307; Railway Co. v. Williams, 50 Tex. Civ. App. 134, 109 S. W. 1126; Travelers' Protective Ass'n v. West, 102 Fed. 226, 42 C. C. A. 284.

[4] Appellant's third assignment of error is as follows:

"The trial court erred, to the prejudice of defendant, in overruling defendant's motion to strike out the testimony of the witness Harry Hinton, in substance to the effect that Will Owens stated to him that he 'busted something' lifting a case of paint, the ground of said motion being that in view of the cross-examination of said Hinton it appeared that the witness, on a former trial of this cause, had testified that Owens did not tell him how he 'busted something,' or caused a hemorrhage, and that the witness' testimony to the opposite effect upon this trial appears to be only the result of the witness' inspection of an ex parte affidavit mentioned by him, which affidavit said witness was giving controlling weight, instead of depending in any sense upon his recollection of events as they occurred, the essential effect of Hinton's testimony in this regard being to put the affidavit itself in evidence, all of which more fully appears from defendant's bill of exception No. 4."

On a former trial of this case the witness had testified as stated in the assignment. In answering the question as to why he had changed his testimony on the present trial by adding to the statement of Will Owens the words "lifting that can of paint," he said, in substance, that since the former trial he had seen an affidavit which he made shortly after the occurrence in which he swore that the statement of the deceased was that he "had done busted something lifting that can of paint," and that, while he has now no independent recollection of the exact words used by the deceased, he knows that the statement made in his affidavit when the matter was fresh in his mind was true, and now swears that the deceased

made the statement as set out in the affidavit.

The court did not err in refusing to strike out the testimony. The contradictory statements of the witness were before the jury. The affidavit does not appear to have been offered in evidence, but no question is made as to the statement contained therein, and no objection made to the introduction of the evidence on the ground that the affidavit was the best evidence of the statements contained therein.

In Starkie on Evidence, § 176, the author says:

"The law goes further, and in some instances permits a witness to give evidence as to a fact although he has no present recollection of the fact itself. This happens, in the first place, where the witness, having no longer any recollection of the fact itself, is yet enabled to state that at some former time, and whilst he had a perfect recollection of a fact, he committed it to writing. If the witness be correct in that which he positively states from a present recollection, viz. that at a prior time he had a perfect recollection, and, having that recollection, truly stated it in the document produced, the writing, though its contents are thus but mediately proved, must be true."

Mr. Wigmore, in his work on Evidence (volume 6, § 734 et seq.), in discussing this rule of evidence, says:

"The propriety of the rule may be inferred from its necessity. And the occurrences of every day furnish abundant proof that the ordinary transactions of life could not be carried on upon any other principle. * * * It cannot be doubted that the use of a past recollection (under the conditions to be examined later) now occupies a firm and unassailable place in our practice and doctrine."

The principle upon which the rule is based is recognized and applied by our Supreme Court in the case of Davie v. Terrill, 63 Tex. 105.

[5] The next and last assignment of error presented in appellant's brief complains of the failure of the trial court to submit to the jury the question of whether the hemorrhage and resulting death of Will Owens was proximately caused by an "accidental injury" within the meaning and scope of the Workmen's Compensation Act. This is a question of law, and not one of fact, and its submission to the jury would not have been proper.

We think the case was properly tried in the court below, and the judgment should be affirmed, and it has been so ordered.

Affirmed.