EDWIN VIRGIN

vs

No. 7530.

EMILE PORKERT,
Appellant.

January 30th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit under the Employer's Liability Act. It was filed August 14th, 1918.

The plaintiff alleges that on February 1st, 1918 while employed by the defendant as a mechanic it was necessary for him in the course of his employment to crank an automobile; that while so cranking he suffered an injury to his spine and back which caused partial paralysis, necessitated two operations, and totally incapacitated him from performing any work at all; that at the time of his injury he was earning fifteen dollars a week; that under the statutes of the State he is entitled to recover from his employer fifty per cent of his weekly wages from February 1st, 1918 until the date of the filing of this suit or twenty-eight weeks at $7.50 per week, making $210.00; that he was under the necessity of employing physicians, going to a hospital, and buying drugs at an expense exceeding $500; and that the fees of his attorney in this case will amount to $500. He prays for $210, with reservation of his right to claim compensation for future disability to work; for $150 physicians' fees allowed by the statute, and for $500 attorney's fees, making a total of $860.00.

The defendant admitted that plaintiff was in his employ as alleged at the salary stated, and that it was necessary for him in the performance of his duties to crank automobiles, but denied that while so engaged plaintiff suffered an injury to his spine and back which caused paralysis, and incapacity to work and necessitated operations, and denied that he was entitled to any part of his wages or to physician's fees; he also denied that he had received the notice of the

injury to plaintiff required by the statute; he "admitted
that the compensation statutes of this State provide, for the
payment of reasonable attorney's fees in contested cases, but
denied that $500 was a reasonable amount".

There was judgment for the plaintiff as prayed for,
and the defendant has appealed.

The reasons for judgment were as follows:

"The plaintiff swaars that he sustained the injuries
while in defendant's employ and while engaged in crank-
ing an automobile. The facts are sustained only by
his evidence, owing to the nature of the accident.
Under the general law there might be some deficiency
in the quantum of evidence; but I think it sufficient
under the law sued on. Accidents may occur in such
circumstances without the knowledge of any one except
the injured party. This is no reason why the com-
pensation should not be allowed. Judgment for plain-
tiff".

Plaintiff's testimony was taken September 4th, 1918
at his residence where he was still confined by sickness,
in the presence of the trial judge.
He testified that he was 22 years old; that he was five feet,
six inches high, and, at the time of the accident, weighed
150 pounds; he was strong and healthy and had worked in shops
as a machinist for three years; that he had never suffered
an ache or a pain since the age of 4 when he had an abscess
on the lungs; on February 2nd, he was ordered to put a magne-
to on a car which was hard to crank, and in doing so, he re-
ceived a severe pain in the back which made him stop; he
straightened up with difficulty, and tried it again, but with-
out success, so he left it alone; he suffered all day; the next
day he returned to work while his back still ached; he walked
home and went to bed; this was Saturday; he summoned Doctor Bar-
nett who came only on Sunday; on Thursday fever set in and he
was taken to the Touro Infirmary; he has been in bed ever since;
he was operated on twice.

Dr. Barnett testified that plaintiff had made the same

statement to him on his first visit on Sunday when he answered plaintiff's call.

Defendant's contention is that this testimony is not sufficient evidence to fix with certainty the cause of plaintiff's suffering. His sole reliance is upon the fact that physicians have testified that it is possible that the injury might have had some other cause. We rest our conclusions that plaintiff has made out his case by his testimony which corroborates the statement he made to Dr. Barnett; by the fact that his veracity is not impeached in any manner, and that the trial judge who saw and heard him, believed him; by the additional fact that plaintiff was sound in body up to that time; that five physicians, witnesses for the plaintiff and for the defendant have testified that it was possible that his injury could have been caused by cranking; and that no one of the three physicians who examined the plaintiff could attribute his injury to any other cause, although he was subjected to physical examinations by the XRay and otherwise. If the physicians could find no other cause for the injury, it would be manifestly unreasonable to reject plaintiff's testimony merely because certain physicians testified hypothetically that the injury might have had some other cause. It is evident that it might have had some other cause; and it did not require expert testimony to infrom us of that fact. But no other cause is suggested or intimated. We must therefore in all justice believe the plaintiff.

"Evidence that an employee was strong and healthy up to the time he complained of a hurt received while at work on heavy lifting, and that he died suddenly a few days thereafter for no other assignable cause, is sufficient to show that he had sustained some internal injury, although there was no external manifestations thereof". C. J. p 68 note c.

But is is argued that if the injury was caused by the cranking of the automobile that it was a part of his duty and done in the ordinary course of his service, and that it was not

an "accident"; but a strain or risk making part of, and incidental to, his employment and assumed by the employee, and for which he could not recover.

Two cases of rupture or hernia suffered by employees lifting heavy weights, without slipping or falling but resulting merely from the effort, and one case of heart failure, from the same cause are relied on. 163 N. W., 933; 164 N. W., 537; and 167 N. W., 36. All three cases from the State of Michigan.

These opinions seem to be in direct conflict with a *one year before* previous case decided by the Court of the same State, and reported in 157 N. W., 437. *what the Michigan Statute was now*

It does not appear, however, by these decisions that the word "accident" was defined by the Michigan Statutes. The interpretation was made by the Court itself. Not so in this State.

Section 2 of Act 20 of 1914 provides:

"That if a workman employed as hereinabove set forth xxx receives personal injuries by accident arising out of and in the course of such employment his employer shall pay compensation &c".

Sec. 38 of the same statute defines the word "accident" as follows:

"That the word "accident"as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury".

This definition is the same as that contained in the Revised Statutes of Nebraska, 156 N. W., 511.

It is the usual signification of the word given by lexicographers. See Century Dictionary, Wright's Universal Pronouncing Dictionary (English): "Accident: An unforeseen or unexpected event".

In furtherance of the benefits which this statute

was intended to confer upon workmen, it should be interpreted liberally, and with a view of giving effect to the intention of the lawmaker. 2 Labatt M. and S. p 1948 § 663. C. J. p 40 34.

*wrench*

That a strain of such violence as to bring on sudden pains and paralysis should follow the cranking of an automobile is certainly an "unexpected and unforeseen event"; otherwise employees could not be found to undertake the job; there is no evidence that,as a rule the act is followed by such consequences; on the contrary, in the ordinary act of cranking no injury is expected. We must therefore presume that when it does happen it is"an unexpected or unforeseen event" or "an accident". In this case we must presume that the sprain was the result of an unusual twist of the wrist, or of a false position of the body, or in other words of an accident. What the law means to except are those injuries which are the necessary concomitants of the employment, such as lead-poisoning by painters, loss of sight by printers, and other insiduous diseases brought about in the course of time, by the nature of continuous occupations which are termed industrial or occupational diseases. C. J. 63 § 54 . 54, note b.

Thus it has been decided that a rupture caused by the effort of separating a plank from one to which it was stuck by ice may properly be found to have been caused by an"accident". So when a workman was in the act of lifting a beam upon his shoulder and finding that it was not evenly balanced, gave it an extra lift and in so doing ruptured several fibres of the muscles of his back, which incapacitated him for work, it was held that he had sustained injury by an"accident". 2 Labatt p 2135 767 and notes. 157 N. W., 437.

In the case of Mutual Accident Ass'n vs Barry, 101 U.S., 100 (121) the Court said:

> "that the term "accidental" was used in the policy in its ordinary, popular sense, as meaning "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected"; that,

389

if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, or unusual occurs which produces the injury, then the injury has resulted through accidental means".

The Court quoted Martin vs Travellers Ins. Co., 1 Foster & Fin, 505, where an injury resulting to the spine from lifting a heavy burden was attributed as an accident; and 69 Penn St., 43 where it was held that an accidental strain was an accident.

In C. J. p 68 57, we read:

"The term "accident" as employed in the compensation acts, is broad enough to include an injury from muscular strain or physical overexertion, such as hernia, or rupture, or bursting of blood vessels". 84 S. E., 242.

It is further contended that the accident, in order to serve as a cause of action must have "produced at the time objective symptoms of an injury". The statute gives no definition of the words "objective symptoms". In the 129 S. W., 953, the following definition is given:

"Objective symptoms are those which the surgeon discovers from a physical examination of his patient, while subjective symptoms are those he learns from what his patient tells him".

None of the physicians who testified seemed to understand what the words meant; counsel for defendant argues that it means symptoms apparent to the sense of sight.

We cannot give the words such a limited meaning; such an interpretation would restrict the liability of employers to apparent cuts, bruises, and swellings, while latent injuries resulting from all other causes would not be protected; thus if a workman's limb was broken or pulled from its socket, or his body paralysed by an electric shock,

or asphyxiated by gas, he could not recover. This was
certainly not the intention of the legislator. We believe
the statute covers any symptoms ascertained by the physician
by any of his senses.

> The Century Dictionary gives the following definition:
> "Objective symptoms, in medicine, symptoms which
> can be observed by the physician, as distinct from
> subjective symptoms, such as pain, which can be
> directly observed only by the patient".

A symptom is "that which indicates the existence of
something else". Century Dictionary.

In the case before us, we take it that the paralysis
which overtook the plaintiff on Thursday, February 6th, was
an "objective symptom" of some latent cause which the physi-
cians were endeavoring to ascertain, and satisfied the re-
quirement of the law relative to the injury. Nor is it neces-
sary that those symptoms be produced "at the time", that is,
on the moment of the accident, provided they appear at a
reasonable time thereafter and can be traced as the cause of
the injury. The words "at the time" means rather at the time
the injury is suffered than at the time the accident occurs.
The accident may not produce injury until some time after.

> "When an accident to an eye which at first appears
> not serious results after a week or more in a diseased
> condition of the eye which destroys the sight, the
> "injury occured" within the meaning of the statute,
> when the diseased condition culminated".
> 156 N. W., 511 ; Nebraska. — *12 Ct App 36*

The last defense is that the plaintiff failed to
notify the defendant of the accident within the time required
by law.

> Sec. 11 p 54 of the Act of 1914 provides:
> "That no proceedings under this act for compensation
> shall be maintained unless a notice of the injury
> shall have been given to the employer within fifteen
> days after the accident, or in case of death within

thirty days and unless either a claim for compensation with respect to such injury or any payment under Section 8 of this act shall have been made within six months after the date of the injury or death. Such notice may be given or made by any person claiming to be entitled to compensation or by some one on his behalf".

By section 13 the notice of the accident must be made in writing and shall contain the name and address of the employee and shall state the time, place, and nature, and cause of the injury and shall be signed by the employee or by a person in his behalf.

Sec. 14 provides that the notice shall be given to the employer by delivering it or sending it by mail addressed to the employer at his place of business.

Sec. 15 reads:

"That a notice given under the provisions of Section 11 of this Act shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place, nature, or cause of the injury, or otherwise, unless it is shown that the employer was in fact misled to his injury thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, or his agent or representative had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice".

By Act 243 of 1916 p 512 (517) Section 11 of the Act of 1914 quoted above was amended so as to read as follows:

"That no proceeding under this act for compensation shall be maintained unless notice of the injury shall be given to the employer within six months after the day of injury or death. Such notice may be given or made by any person claiming to be entitled to compensation or by some one in his behalf".

It is evident that under this amendment the statute is satisfied if notice of the injury is given within six months after the injury and that it prevails over the terms of Sections 11 and 12 of the Act of 1914. The evidence in this case is that the accident happened upon February 2nd, 1918, and that this suit was filed on August 14th, 1918.

But plaintiff's father testified that on February 4th, he telephoned to the defendant and told him about the plaintiff's injury, and about four weeks afterwards he told defendant personally that the plaintiff had been taken to the Touro Infirmary to be operated on for an injury resulting from cranking an automobile while in his employ.

The defendant admits that plaintiff's father on two occasions, within a few weeks after the accident, informed him that plaintiff was sick, but he denies that he was told that plaintiff had been injured by cranking an automobile.

This witness is contradicted by the following letters.

"Southern Surety Company.

New Orleans, La., March 27th, 1918.

Mr. Edw. Virgin, Sr.,
City.

Dear Sir:

With regard to claim for compensation growing out of the alleged injury of your son, while in the employ of Emile Porkert, we are handing you herwith surgical reports upon which we would thank you to secure full information from the doctors in attendance, but with the express understanding that in furnishing these reports the Southern Surety Company and Emile Porkert reserve fully all their rights in the premises".

Yours very truly,

H. Bodenheimer & Sons.

Then follows the surgical report signed by Dr. Barnett giving all the details of the accident and injury to plaintiff as to date, cause, and consequende.

"Southern Surety Company.

New Orleans, La., June 10th, 1918.

In Re Claim No. 106750.

Assured:. Emile Porkert's Machine Works.

Injured: Edwin Virgin, Jr.

Mr. Edwin Virgin, Sr.

Gentlemen,

Your letter of recent date, with regard to claim which you are presenting against Emile Porkert's Machine Works, was received and by us referred to the home office of our company. We have not heard from them in reply and are again writing them to-day and this is to advise you that the matter has been given our attention. As soon as we hear from them, stating their position on this case, we will promptly communicate with you.

Yours very truly,

H. Bodenheimer & Sons".

This, and other evidence, shows that the defendant had knowledge of the accident and referred it to his insurers, and that he was not prejudiced by the want of the detailed written notices described in the Statute. It is evident that the defendant when informed of the alleged accident and injury to plaintiff turned the matter over to his insurers against accidents and did not seek himself otherwise to protect himself. He did not go himself to the Touro Infirmary, nor did he send any physician to investigate. His conduct shows that he was not prejudiced by the want of a technical statutory notice. There is no necessity of notifying one who is already possessed of the information. 152 N. W., 839. We need not light candles when the sun shines. C. J. p 104 § 102.

But the plaintiff has prayed for and has been allowed attorney's fees against the defendant. It is an elementary and universal rule of law that plaintiff must prove his claim; that he is not entitled to recover unless some law or some contract authorizes him so to do. Attorney's fees, as a rule, are not

394

allowed unless granted by statute or jurisprudence. There is no jurisprudence in this State giving Attorney's fees in Employer's Liability Acts in addition to the weekly awards; no such claim was made in our Courts before; nor is there any law to that effect; neither is there law or jurisprudence in any other State imposing the payment of the employee's attorneys fees upon the employer. They were specifically denied in 152 N. W., 838 (840) and in 130 Pac., 371. In 96 Atl., 660; 88 N. J., 513, they were allowed, but payable out of the award in favor of plaint'ff. The Court said that the statute contemplated payment of attorney's fees from the weekly award commuted to a lump sum.

Our Supreme Court has repeatedly held that a plaintiff could not recover his attorney's fees for prosecuting a suit in damages. 36 A., 132, 377; 39 A., 929; 15 A., 517; 14 A., 311; 13 A., 342; 10 A., 564, 19 L., 357; 17 La., 266; 28 A., 878; 34 A., 61; 35 A., 694, 466; 40 A., 25.

There is no provision in our Emplayer's Liability Act entitling the plaintiff to recover for his attorney's fees against the defendant. Section 8 of the Act defines the amount of compensation, a paragraph entitles the workman to expenses of last sickness and burial, and another to medical services and medicines, in no unmistakable terms and fixes the amount thereof.

> p 517: (14).
> "In case of death, the employer shall pay or cause to be paid, the reasonable expenses of the last sickness and burial of the employee, not exceeding $100".
> (4)
> "The employer shall in every case furnish the employee reasonable medical, surgical, and hospital service and medicines not to exceed $150 in value unless the employee refuses to allow them to be furnished by the employer".

But there is not a line in the act making it the duty of the employer to pay the fees of the attorney engaged by the employee to prosecute his claim in damages. The liability of

the defendant to pay for plaintiff's attorney's fees must therefore be governed by the jurisprudence applicable to other damage suits.

But plaintiff relies upon the last sentence of Section 22 of the Act of 1914 p 58 which reads as follows:.

"Fees of attorneys and physicians for services under this act shall be reasonable and measured according to the workman's station and shall be approved by the Court".

This provision evidently is copied from a statute similar to the New Jersey Statute where a periodical payment was commuted to a lump sum from which were paid the physicians and attorneys. If the Statute had intended these attorney's fees as an additional burden upon the "employer", why should the legislator have shown so much solicitude that these fees should be reasonable and measured accodring to the "workman's" station? If the employer and not the workman was to pay the fees, why should the workman's station be the measure of the fees? It seems to us that the employer's station or ability to pay would have been a better measure. But it suffices that the act does not make it the duty of the employer to pay, to destroy plaintiff's claim for attorney's fees. Even doubt is sufficient to defeat him, because he must make his claim certain.

It is therefore ordered, adjudged and decreed that so much of the judgment appealed from which allows the plaintiff $150 for medical aid and $210 for compensation be affirmed and *that* so much of the judgment which allows the plaintiff $500 for attorney's fees be reversed; and accordingly the judgment appealed from in favor of plaintiff is reduced from Eight Hundred and sixty dollars to Three Hundred and sixty dollars, the plaintiff and appellee to pay the costs of this appeal.