No. 2338.
Second Circuit.

WILLIAM M. McMULLEN v. LOUISIANA CENTRAL LUMBER COMPANY.

(February 8, 1926.   Opinion and Decree.)
(March 11, 1926.   Rehearing Refused.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant —Par. 154, 158.

An inguinal hernia, the development of which is caused by over-exertion or a strain, is an "accidental injury" within the Workmen's Compensation Act No. 20 of 1914, Section 2, Par. 1, and Section 38, Par. 1, as amended by Act 38 of 1918.

Appeal from Eighth Judicial District Court of Louisiana, parish of Caldwell, Hon. F. E. Jones, Judge.

This is a suit for compensation under the Workmen's Compensation Act No. 20 of 1914. There was judgment for plaintiff and defendant appealed. The case was remanded for the purpose of admission of evidence on the question of plaintiff's capacity to earn wages since the accident, but on defendant's application the case was remanded to the District Court for all purposes. A new trial was had and no additional evidence was introduced by defendant as to plaintiff's capacity to earn wages since the accident, but plaintiff tendered himself as a witness. There was judgment for plaintiff and defendant appealed. Judgment affirmed.

Huey P. Long of Shreveport, attorney for plaintiff, appellee.

Thornton, Gist and Richie of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. In this case there was judgment in the District Court in favor of the plaintiff, and the defendant appealed, and the judgment of the District Court was affirmed in so far as it held defendant liable to plaintiff for compensation in some amount and was remanded to the District Court solely for the purpose of the admission of evidence on the question of plaintiff's capacity to earn wages since the accident to him, and on defendant's application our judgment was modified so as to remand the case to the District Court for all purposes.

A new trial was had and no additional evidence was introduced by defendant as to plaintiff's capacity to earn wages since the accident.

Plaintiff tendered himself as a witness and testified that he had not been able to earn any wages since he was injured. He admitted, however, that he and his wife and family had been operating a boarding house since the accident, but said that they had not been able to make expenses. His evidence shows, we think, that his wife and children did the work and for all practical purposes operated the boarding house; because when his wife was sick for two months they had to close the boarding house.

On the new trial defendant devoted its efforts to attempting to show that hernia is a disease and hence not compensable under the workmen's compensation act.

"Q. When a man has hernia in the course of development, regardless of whether or not he has any strain or lick on the abdomen, will it finally develop and the intestines finally protrude?
"A. It will finally descend, possibly into the sac, especially as age approaches."

Page 17.

"Q. If a man was born in that condition, very likely wouldn't it fully develop before he was sixty years of age?

"A. Not necessarily, no.
"Q. It would be a very rare case for him to grow to be sixty years, wouldn't it?
"A. Very rare. Usually it would develop early in life."

Page 18.

"Q. Do you think it likely that a man born in that condition would grow sixty years without ever having any pain from it, and without being examined by a doctor?
"A. If he has a hernia when he is born, he will never go sixty years without it being discovered, no."

Doctor Peters testified, page 27:

"Q. Is manual labor conducive to development of an acquired hernia?
"A. I think so. Any strain or lifting or any setting up exercise. The existence of the hernia is more frequent among that class of people. It is found more among the Rachelle or Italian types, who are more disposed than others. It may be because they do more heavy manual labor. Those people have a setting for hernia."

Doctor Anthony testified, page 29:

"Q. In your opinion, doctor, would standing erect and pulling on a wrench cause the sudden development of a hernia?
"A. That would depend entirely on how hard the fellow pulled. It is entirely possible that it might cause a hernia to develop or aggravate one that was already developing. They are usually developed from some certain strain when the abdominal muscles or other muscles, that help protect those things are off their guard, and they get a strain, like lifting in a stooping position. Then you get a strain or have a weight dropped on you, or something like that."

Page 30.

"Q. In this case, doctor, according to the testimony of the plaintiff, he never had any trouble with his abdomen before, that he knew of, while standing erect or straight up, and pulling on a wrench, he developed a severe pain in his side. He called a helper to tighten up the nut, and later went back to work and worked the balance of that day and the next day, and the second day. In other words, he worked more than two full days after he felt the pain.

Several days after that, he called at the office of a physician, and on examination the physician found that he was suffering with an inguinal hernia. Is it your opinion that that pull on that wrench could have caused that hernia?

"A.  It is much more likely that the hernia already existed, and that the pull on the wrench caused some pinching of the intestines or the pushing of the contents that were in the hernia, or that more was pushed into it by the strain and overstretched the ring, and caused the pain."

Page 31.

"Q.  In your opinion, did that pull on the wrench have any more to do with the development of that hernia than any other physical exercise that he had undergone prior to that time, such as pulling wrenches, climbing the steps of his machine, etc.?

"A.  It might have. The effect on a developing hernia depends entirely upon the strength of the intra abdominal pressure.

"Q.  Is there any great amount of abdominal pressure of pulling, when standing straight up?

"A.  Ordinarily you would not think so, but it is possible that it would be increased.  He might have been under a strain otherwise, standing erect; he might not have been comfortable. The hernia being progressive, might have developed to a certain point that very little trauma or a trauma that ordinarily might not affect it, might at this time give him pain.

"Q.  In your opinion, could that pull on that wrench be said to be the cause of that hernia, or a material aggravation of the hernia?

"A.  I would not consider it the cause, but it might have aggravated it.

Doctor Rand testified, page 35.

"Q.  In this case the plaintiff, while engaged in the scope of his employment with the defendant as loader, running a loading machine, while tightening a nut with a wrench, felt a sudden pain in his side. He quit pulling on the wrench at the time, and had somebody else tighten the nut.  A little while after that he went back to his work, and continued loading logs that day, and worked for two days after that, and several days after that he was examined by a physician, who discov-ered that he had a small inguinal hernia, well developed.  He testified that he had never had any pains in his abdomen, no trouble there, and as far as he knew, never had a hernia.

"Q.  Under these conditions, please state what, in your opinion, pulling on the wrench had to do with the development or cause of the hernia?

"A.  I doubt exceedingly if it had anything to do with the cause of the hernia. The strain or pull that he had on the wrench, if severe enough, might enlarge it, or aggravate it, but I doubt if it could produce one.

"Q.  In your opinion, doctor, state whether or not the hernia existed at that time?

"A.  The hernia existed before he was injured."

Page 37.  .

"Q.  Would you think this congenital?

"A.  I think practically all hernias are congenital."

Page 39.

"Q.  Was the kind of work he was doing likely to aid in the development of the hernia?

"A.  Great strains will undoubtedly increase the intra abdominal pressure and cause the development of hernia in individuals quicker than one who lead a sedentary life.  If this man has been a laborer all his life, doing the same type of work, I see no reason why at sixty years with the proper amount of exercise, a hernia should exist any sooner at sixty than it would at twenty."

Defendant insists that this evidence proves that hernia is a disease and not compensable under the Workmen's Compensation Law.  We cannot concur in this view. The evidence, we think, clearly shows that a strain might produce hernia.

The Supreme Court in Behan vs. John B. Honor Co., 143 La. 358, 78 South. 589, held that the fact the injured employee was already affected with a dormant disease that might some day have produced physical disability is no reason why the employee should not be allowed compensation.

In our opinion the evidence establishes

that hernia may result from a strain such as that complained of by plaintiff.

In our original opinion herein, on application for rehearing, we quoted from "Workmen's Compensation Acts" a Corpus Juris treatise by Donald J. Kiser, issued by the American Law Book Company, the following statement of the law, on page 68, as sustaining the proposition that the term accident, as used in the compensation act, is broad enough to include an injury from muscular strain or over-exertion.

"The term 'accident', as employed in the compensation acts, is broad enough to include an injury from muscular strain or physical over exertion, (41) such as hernia or rupture, (42) or bursting of blood vessels, (45). This is true although the physical condition of the employee is such as to predispose him to the injury (44). But it has been held there must be a definite particular occurrence to which the injury can be attributed." (45).

Under Note 42, relating to hernia or rupture, are cited the folowing cases:

Bell vs. Haynes-Iona Co. (Mich.), 158 N. W. 17%.

Robbins vs. Original Gas Engine Co. (Mich.), 157 N. W. 437.

Zappala vs. Industrial Ins. Comm., 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A, 295.

Poccardi vs. Pub. Service Comm., 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299.

Fenton vs. Thorley (1903), A. C. 443, 5 W. C. C. 1.

Brown vs Kemp, 6 B. W. C. C. 725.

Fulford vs. Northfleet Coal Co., 1 B. W. C. C. 222.

Under Notes 41, 43, 44, 45, 46 and 47 are also cited:

"Acceleration of a diseased bodily condition may constitute a personal injury, (46) and an injury may be by 'accident', although it would not have been sustained by a perfectly healthy individual."

In addition to these authorities we desire to quote the additional authority of Klika vs. Independent School District No. 79, a Minnesota case, reported in 202 N. W. 30, decided January 23, 1925, and the syllabus of which reads as follows:

"An inguinal hernia, the development of which is caused by overexertion or strain, is an 'accidental injury' within the Workmen's Compensation Act and is compensable. It is unimportant in the administration of the law whether from a medical or scientific standpoint, hernia is classed as a disease or a malformation or is otherwise designated; nor is it important that the employee is predisposed thereto. The law concerns itself only with the legal cause."

From all the evidence in the case and the authorities above quoted, we are convinced that our original judgment herein was correct, and that the defendant is responsible for compensation.

This brings us to the question of the amount of the compensation. The evidence shows that at the time the plaintiff was injured he was earning $175.00 per month. He testifies that since the accident he has not been able to do any work. On page 4 he says:

"Q. During what period of time, if any, since that time have you been totally disabled to work?
"A. I haven't worked any since that time.

Page 5:

"Q. Why haven't you?
"A. Because I haven't been able.

Page 9:

"Q. Did you go back to work?
"A. No, sir.
"Q. Why didn't you?
"A. Because I didn't think I could stand the work.

Page 11:

"Q. Have you tried to do any hard work since this happened?

"A.   No, sir.
"Q.   Why haven't you?
"A.   I haven't been able to."

On the new trial defendant did not introduce any additional evidence on this point.

Plaintiff tendered himself as a witness and swore that he had not been able to earn wages since his injury; that his wife and himself and his family had operated a boarding house since that time. The evidence, we think, shows that the injury complained of has produced partial disability on the part of the plaintiff to do work of any reasonable character, and there is no evidence showing that since the accident he has been able to do work at which he could earn wages.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed.