### GEORGIA CASUALTY CO. v. MIXNER et al. (No. 8880.)*

(Court of Civil Appeals of Texas. Galveston. Dec. 4, 1926. Rehearing Denied Dec. 23, 1926.)

1. **Master and servant** ⊚⟞373—**Injury to employee from lifting held "accidental," within Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309).**

Evidence that employee, while engaged in placing armature in electric motor, was required to work in place, where cramped position required greater exertion than usual to lift armature, made injury from such lifting "accidental," within Workman's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), and compensable, since he was required to work under unusual or unexpected conditions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident—Accidental.]

2. **Master and servant** ⊚⟞373—**Injury by over exertion in performing work is compensable (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, arts. 8306–8309]).**

Injury caused by strain from overexertion, in performing work required of one in course of his employment, is one for which compensation is provided, under Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309).

3. **Appeal and error** ⊚⟞742(1)—**Where no propositions or statements are presented in brief under assignments, questions are waived on appeal.**

Where assignments were copied in brief, but no propositions or statements were presented in brief under those assignments, questions had to be regarded as waived on appeal.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Suit by the Georgia Casualty Company to set aside an award of the Industrial Accident Board in favor of Frank Mixner. From a judgment for defendant and his assignees, plaintiff appeals. Affirmed.

Frank S. Anderson, of Galveston, for appellant.

King & York, of Austin, and Levy & Barker, of Galveston, for appellees.

---

PLEASANTS, C. J. This appeal is from a judgment of the court below in favor of appellees against appellant, rendered in a suit brought by appellant to set aside an award of the Industrial Accident Board in favor of appellee Frank Mixner, against appellant, for compensation at the rate of $20 per week from March 3, 1924, to October 15, 1924, for injuries sustained in the course of his employment.

The trial in the court below with a jury resulted in a verdict and judgment awarding Mixner and his assignees, the other appellees herein, compensation in a lump sum in the amount of $6,899.67.

Appellee Frank Mixner, an employee of the Max Levy Electric Company, was injured while engaged with Mr. Creighton, another employee of the company, in placing an armature in the electric motor which furnishes the power that operates the elevators in one of the office buildings in the city of Galveston. The armature, which weighed 300 pounds, was brought up in one of the elevators to the sixth floor of the building, where it was lifted out of the elevator by Creighton and Mixner and placed on the floor under a hatchway in the floor of the penthouse, where the armature was to be placed. The distance from the sixth floor to the penthouse was from 15 to 18 feet, and from the floor of the penthouse to its roof is 6½ feet. To lift the armature through the hatchway to its desired position, they used a block and tackle, the pulley of which was fastened to the roof of the penthouse. When they began lifting the armature, Mixner was in the penthouse doing the pulling and Creighton was on the floor from which the armature was being lifted to see the fastenings which held it. After Mixner had pulled it up about 2½ feet from the floor, Creighton went up in the penthouse to assist Mixner there. When he got up there, Mixner had pulled the armature nearly up to the hatchway. The opening was so small that the armature would not come through unless it was put in a slanting position. To do this, Creighton got down on the floor of the penthouse on his stomach, and reached through the hatchway, and pushed or pulled the armature in the position necessary to get it through the hatchway. While he was thus engaged, Mixner was pulling and jerking on the tackle in the effort to get the armature through the hole. As they finally succeeded in their effort, Mixner collapsed and sank down from the strain to which he had been subjected. The injury resulting under these circumstances is the basis for Mixner's claim for compensation.

Mixner testified that he had been pulling on the rope for some time before Creighton came to his assistance in the penthouse, that after Creighton came to his assistance:

"We both pulled, and we kept on pulling until the armature struck the bottom of the ceiling of the sixth floor, that is, the bottom underneath the penthouse. I had to hold it, and Clarence had to reach down, to get down on his stomach and pull from the ceiling, so that I could give it a quick jerk, get it in the clear inside of this hatchway. I said, 'Now, Clarence, you get another hold.' We pulled, and we pulled. I would get my right hand over like this [indicating]. I had a terrific pain as I gave the last jerk, and I went down in a sitting position. My hand dropped to the side, my mouth stayed open, and I couldn't talk; I tried to talk."

After a short time, with Creighton's assistance, he got up from the floor and went to see a physician, who sent him to the hospital. He stayed in the hospital a month. In describing his condition, he testified as follows:

"Since this accident to me in the Trust building, I have had no use of my left arm, no use at all from the end of my shoulder down; I can't do nothing with it; I don't feel; I can't tie my necktie; I can't tie my shoes; I haven't tied my shoe strings from the 3d of March up to this time. I can take off my hat only with difficulty. I haven't done any work, sir, since the 3d of March, 1924. As to the condition of my left leg since the 3d of March, 1924, my left leg is very weak, and has been since the accident happened. I walk with much difficulty. Sometimes I take three steps, and sometimes I am compelled to stop walking—a cramp takes me and my toes turn up, and regardless of where I am, I have to stop, whether it is in the middle of the street or where. I suffer with pain. I may start and walk and have to give up in six steps in the morning, and again I may be able to walk a half block in the morning, when I get those cramps."

Dr. T. H. Harris, who qualified as a medical expert, testified that Mixner was suffering from paralysis of one side of his body and that this condition was the result of a ruptured blood vessel in the brain, which was caused by overexertion and strain in pulling the armature in the manner and under the circumstances before described. He says:

"In my opinion, while he was exerting himself, the rupture occurred. The strain he was undergoing elevated his blood pressure to the extent that it caused a rupture of the blood vessel, producing the paralysis.

"With reference to what was the immediate and direct cause of the spastic paralysis: The paralysis simply was the result of the cutting off of the influence of the brain from the muscles by the tearing of the fibers that go from the brain down to the muscles; the hemorrhage, the ruptured vessel, and the blood flowing out through the tissues of the brain just simply tore those fibers, as a broken waterpipe would tear up the ground, if it should rupture in the same sense.

"I would say that this paralyzed condition of the left arm, side, and leg is permanent.

"I don't think Mixner could ever perform manual labor that would require the use of both arms or legs. He might perform labor such as waiting on customers behind a counter, but as to doing hard manual labor I don't think he

could do that. I don't think he could do that. I don't think he will ever be in any better shape than he is now."

No question is raised in appellant's brief as to the character and extent of the injury, but it is earnestly insisted that the injury so received was not the result of an accident, in the purview of our Workmen's Compensation Act, and therefore not compensable under that act.

Appellant's sole contention is shown by the following quotations from its brief:

"To entitle appellee to recover, it must therefore be shown: (a) That Frank Mixner sustained injury in the course of his employment; and (b) that the injury arose by accident.

"It is conceded that the pathological conditions affecting appellee Mixner became manifest in the course of his employment, so that discussion of this point becomes unnecessary.

"Passing to the second essential for recovery, the question arises whether appellees have shown that Frank Mixner received personal injuries arising from accident? * * *

"On the day when Mixner suffered the shock, did there occur anything as the cause of that shock, that was unusual, unexpected, and undesigned? Of course, the shock was unusual, unexpected, and undesigned, but that is not the point involved, but, rather, was the shock caused by anything arising from the conditions under which Mixner worked, which was unusual, unexpected, or undesigned?

"Cause must not be confounded with effect. The vital question is whether anything unusual, unexpected, or undesigned occurred as the cause of the shock."

[1] If, as contended by counsel for appellant, the injury to Mixner cannot be regarded as an accidental injury unless there was something unusual or unexpected in the conditions under which he was doing his work, we think the evidence showed such unusual and unexpected conditions. Mixner was compelled under the existing conditions to do his work in a place where a cramped position required greater exertion than usual to lift the armature. The hatchway was so small that the armature could not be drawn through it unless it was placed in a slanting position, and for this reason Mixner's helper was required to abandon his hold on the rope, get down on the floor, and guide the armature through the hatchway, thus leaving the entire weight of the armature for Mixner to hold and lift with the aid of the block and tackle. Certainly, these conditions cannot be regarded as the usual conditions under which the work of placing an armature in an electric motor would be done.

But we do not agree with the contention that an injury cannot be regarded as accidental, in the purview of the Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), unless the conditions under which it occurred are unusual and un-

expected. In Boyd on Compensation Laws, § 458, it is said:

"Strain sustained by employees of normal health in the course of their employment are generally regarded as accidental injuries. Ruptures resulting from lifting heavy objects are generally held fortuitous and unexpected events; in other words, accidents."

[2] The decisions of our courts recognize and follow the rule above stated, and hold that an injury caused by strain or overexertion in performing the work required of one in the course of his employment is an injury for which compensation is provided under our statute. Texas Employers' Ins. Association v. Jimenez (Tex. Civ. App.) 267 S. W. 752; Texas Employers' Ins. Association v. Moore (Tex. Civ. App.) 279 S. W. 516; Southwestern Surety Co. v. Owens (Tex. Civ. App.) 198 S. W. 662.

[3] As before said, the question before discussed is the only question presented in appellant's brief. Other questions are raised by the assignments copied in the brief, but, as no propositions or statements are presented in the brief under these assignments, they must be regarded as waived. If, however, the assignments should be considered, none of them could be sustained.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.