Appellant's motion for a rehearing is overruled.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

**CONSOLIDATED UNDERWRITERS v. CHRISTAL et al.**

**No. 10,971.**

Court of Civil Appeals of Texas. Galveston.

Dec. 21, 1939.

Rehearing Denied Jan. 11, 1940.

Benbow, Saunders & Holliday and Sam Holliday, all of Houston, for plaintiff in error.

Gordon O. McGehee and Morris Pepper, both of Houston (J. A. Copeland, of Houston, of counsel), for defendants in error.

MONTEITH, Chief Justice.

For convenience in this opinion we shall designate the plaintiff in error, appellant, and the defendant in error, appellee.

This is an appeal in an action brought by appellee, Zelia Christal, to set aside an award of the Industrial Accident Board in favor of appellant, Consolidated Underwriters.

The record shows that Shellie Christal, the deceased husband of Zelia Christal, died on the night of November 6, 1937, from the effect of a cerebral hemorrhage. At the time of his death he was employed as a rice trucker for the Pritchard Rice Milling Company, by whom he had been employed for approximately eight years. For a period of a year and a half prior to his death he had suffered from high blood pressure and had been treated for this ailment as late as April, 1937. On the morning of November 5, the day before his death, he went to work as usual in apparently good health, but in the middle of the afternoon complained to his fellow-workers of a severe headache. On the following day he complained continually and was unable to work the latter part of the day. He died about 9 o'clock P. M. on November 6, 1937.

The Industrial Accident Board denied appellee a recovery. From this ruling she appealed to the district court of Harris County.

The case was tried before a jury, who in answer to special issues submitted found that on or about November 6, 1937, in handling sacks of rice for the Pritchard Rice Milling Company, Shellie Christal over-exerted himself; that on said date he was affected by a pre-existing disease of high blood pressure which was aggravated by such over-exertion and from which he sustained a cerebral hemorrhage on November 6, 1937; that such over-exertion was a direct cause of such injury, which was sustained in the course of his employment with the Pritchard Rice Milling Company; that said injury was a direct and contributing cause of his death, which was caused by the combined effect of such injury and the pre-existing disease of high

blood pressure, and that his death was not caused solely by disease; that the payment to plaintiff of compensation in weekly installments, instead of a lump sum settlement, would result in manifest hardship and injustice to her.

Appellant assigns error in the refusal of the court to submit to the jury its requested issues Nos. 2 and 3. Requested special issue No. 2 reads: "Do you find from a preponderance of the evidence that such over-exertion, if any, did not act only to make Shellie Christal more predisposed to have the fatal cerebral hemorrhage as the result of his high blood pressure?"

Requested special issue No. 3 reads: "If you have answered Special Issue No. 3 'We do', and only in that event, then answer the following: Do you find from a preponderance of the evidence that such aggravation, if any, was only such as to make Shellie Christal more predisposed to have the fatal cerebral hemorrhage as a result of his high blood pressure?"

The record shows conclusively that prior to his death Shellie Christal was suffering from high blood pressure. Both Drs. Brumby and Thompson testified that this pre-existing condition of high blood pressure was the cause of the fatal cerebral hemorrhage. Dr. Thompson further testified, in answer to a question as to the relation of over-exertion to a cerebral hemorrhage: "It is a pre-disposing cause to a hemorrhage, provided you have a high blood pressure connected with that. In other words, in a high blood pressure case I advise my patients to do light work and not to get around to where they get too excited or do too heavy work, because heavy work or excitement are pre-disposing causes to cerebral hemorrhage, provided you have high blood pressure."

The record shows that the work in which Shellie Christal was engaged required a great deal of effort and strain. The jury found in answer to special issues submitted that the pre-existing disease of high blood pressure was aggravated by over-exertion and that such over-exertion was a direct cause of the cerebral hemorrhage which he sustained on or about November 6, 1937.

It is stated in 45 Tex.Jur., page 492, Section 98: "If a protected employee sustains an accidental injury of the character defined in the law and from which disability or death results, it is compensable even though, at the time, he was suffering from some disease or infirmity that rendered

him more susceptible to such an injury, or that aggravated or enhanced its effect. That is to say, if there be a real injury, the background of his peculiarities will not defeat compensation for it, and, 'there is no defense to a claim for compensation, based on the fact that the injuries would not have been as great had the employee been in a perfectly healthy condition.' The employer accepts the employee subject to his condition when he enters the employment. Moreover, the fact that the disease was a concurring cause with the injuries in causing disability or death does not preclude the grant of compensation. But in these cases it must appear that there was an injury in the course of employment which directly resulted in disability or death."

It is further stated in 45 Tex.Jur., pages 494–496, Section 99, that: "Included among accidental injuries received in the course of employment, for which compensation has been allowed, are those resulting from strain and those sustained where a strain resulted in the bursting of a blood vessel and consequent apoplexy and death or partial paralysis, where such injuries flowed from something out of the ordinary, and unexpected, and were definitely located as to time and place. The mere fact that the workman in whom the rupture occurred had at the time diseased arteries or high blood pressure is not conclusive as to the injury having been the result of a disease and not accidental. Whatever the physical condition of the individual may have been, if it was such that some physical exertion or strain was required to cause the rupture the injury may be classed as an accidental one."

Since the jury found on sufficient evidence on the ultimate issues that such over-exertion was the direct producing cause of said fatal hemorrhage and that the death of Shellie Christal was not caused solely by disease, appellant cannot avoid liability by showing a pre-existing disease or that an exaggeration thereof was only such as to make Shellie Christal more predisposed to cerebral hemorrhage as a result of his high blood pressure. Armour & Co. v. Tomlin, Tex.Com.App., 60 S.W.2d 204; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App., 65 S.W.2d 344; Traders & General Ins. Co. v. Wright, Tex. Civ.App., 95 S.W.2d 753; Hurd v. Republic Underwriters, Tex.Civ.App., 105 S.W. 2d 428.

We overrule appellant's contention that the court erred in refusing to submit its requested issue No. 4, which reads: "Do you find from a preponderance of the evidence that the directness of the causal connection, if any, between such over-exertion, if any, and the fatal hemorrhage in question was not interrupted by his diseased condition of high blood pressure as a new and intervening cause, as the term new and intervening cause is hereinafter defined for you?"

The evidence is uncontroverted that Shellie Christal had been suffering from the disease of high blood pressure for approximately a year and a half prior to his death. It follows that said diseased condition did not intervene between such over-exertion and the fatal hemorrhage, from the effects of which he died, but that it was a contributing cause therewith and that therefore requested issue No. 4 was not raised by the evidence in the case.

We are unable to sustain appellant's contentions that the court erred in refusing to submit its requested issue No. 5, which reads: "Do you find from a preponderance of the evidence that Shellie Christal's physical condition before the occurrence of the fatal hemorrhage in question on November 6, 1937, was such that, as a result of his diseased condition of high blood pressure, he was not in danger of having the fatal cerebral hemorrhage from his ordinary movements of life similar to those made by the public generally."

The above issue, in effect, requests the jury to find whether the cerebral hemorrhage from which Shellie Christal died was caused solely by his diseased condition of high blood pressure. The court submitted to the jury special issue No. 10, as to whether the death of Shellie Christal was caused solely by disease. It is the settled law of this state that a party is not entitled to the submission of two or more issues relating to the same ground of recovery or matter of defense. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356; Texas & N. O. Ry. Co. v. Neill et al., 128 Tex. 580, 100 S.W.2d 348.

Appellant assigns error in the refusal of the court to define the term "injury" in connection with the issues in which the term is used.

The record shows that the trial court used the term "injury" in special issues 5, 6, 7, and 9, but that no definition of the term was given to the jury in connection

with such special issues, except that the term "injury sustained in the course of employment" was defined in connection with special issue No. 6. The only objection filed by appellant on the ground that the trial court failed to define the term "injury" was its objection to the court's definition of the term "injuries sustained in the course of employment" given in connection with special issue No. 6.

Special issue No. 6 and said definition reads: "Do you find from a preponderance of the evidence that such injury, if any, was sustained in the course of employment for the Pritchard Rice Milling Company, as that term is hereinbelow defined for you? * * * The term 'injury sustained in the course of employment' includes injuries of every kind or character, having to do with and originating in the work, business, trade or profession of the employer received by an employee in or upon the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

Appellant objected to the definition of the term "injuries sustained in the course of employment" given in connection with special issue No. 6, because the term "injuries" as used in said definition is not defined for the jury, and because it is not confined to the injuries pleaded nor to any raised by the evidence, and that consequently it was too general.

The undisputed evidence shows that Shellie Christal died of a cerebral hemorrhage. The jury found that said cerebral hemorrhage was directly caused by over-exertion and was sustained in the course of his employment. Under the above facts, we think that, as a matter of law, such injury was compensable, and that therefore it was not necessary for the trial court to define the term "injury" or "injuries" for the jury, particularly since the definition given by the court of the term "injuries sustained in the course of employment" in connection with special issue No. 6 was given in the exact language in which that term is defined by the statute (R.S.Article 8309, § 1).

We are unable to sustain appellant's contention that the court erred in refusing to submit to the jury an issue as to whether the injury in question was an accidental injury, since the evidence in the case was amply sufficient to support the jury's findings that on the date alleged Shel-

lie Christal over-exerted himself while handling sacks of rice for the Pritchard Rice Milling Company, and that he thereby sustained the fatal cerebral hemorrhage which was directly caused by such over-exertion, and that he sustained such injury in the course of his employment for such company, since it follows that the question as to whether the death of Shellie Christal was an accidental injury was a question of law and not an issue of fact, and, further, that since appellant having failed to request the submission of such issue to the jury, appellee cannot be held to have waived such issue.

The testimony of Drs. Brumby and Thompson, taken in connection with evidence of witnesses with whom Shellie Christal was working, amply supports the findings of the jury and renders the question as to whether the death of Shellie Christal was caused from accidental injuries a question of law to be determined by the court. Southwestern Surety Ins. Co. v. Owens, Tex.Civ.App., 198 S.W. 662; Georgia Casualty Co. v. Mixner, Tex.Civ. App., 289 S.W. 420; Texas Employers' Ins. Association v. McGrady, Tex.Civ.App., 296 S.W. 920.

As to appellant's contention that there is a variance between the pleadings and proof, on the ground that the evidence shows that the injury occurred on November 5, 1937, while plaintiff's petition alleged that the deceased sustained his injury on or about November 6, 1937, we think that appellant cannot complain of said testimony at this time, since no objection was interposed on the trial on the ground of such alleged variance. Further the evidence shows that only one injury was pled by appellee, namely, a cerebral hemorrhage, which was alleged to have occurred on or about November 6, 1937, and there is no evidence or contention that such cerebral hemorrhage was the result of any occupational disease. American Employers' Ins. Co. v. Scott, Tex.Civ.App., 33 S.W.2d 845; Kelsey v. Myers, Tex.Civ. App., 29 S.W.2d 855.

It was held in the case of Jarrett v. Travelers' Ins. Co., Tex.Civ.App., 66 S.W. 2d 415, where an employee had strained his back on one day and several days later had suffered a more severe strain which resulted in disability, that an injury may develop long after the original accident and still be the result thereof within the

requirements of the compensation act, citing' the cases of Texas Employers' Ins. Ass'n v. Herron, Tex.Civ.App., 29 S.W. 2d 524; Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405; that the niceties and exactnesses of common law pleadings are not required in compensation proceedings, and that when an insurer is not harmed it cannot complain of an error as to the exactness of time when an injury occurred; and further, that an inadvertent error as to the date of an occurrence in an alleged pleading is not material when there had been no claim of surprise and when no one has been misled by the inadvertent error. Consolidated Underwriters v. Hubbard, Tex.Civ.App., 107 S.W.2d 908; Maryland Casualty Co. v. Overstreet, Tex.Civ.App., 42 S.W.2d 160; Indemnity Ins. Co. v. Judice, Tex.Civ.App., 40 S.W.2d 246.

Under the testimony in the instant case that the cerebral hemorrhage from which Shellie Christal died had its inception in a strain or over-exertion which caused the accidental bursting of a small artery in the brain on Friday, and culminated in a greater hemorrhage the following day which culminated in his death, there was in contemplation of the compensation act but one injury, and therefore there was no variance between appellee's pleading and proof.

Appellant assigns error in the failure of the court to submit to the jury its special issues Nos. 6 and 7.

Requested issue No. 6 reads: "Do you find from a preponderance of the evidence that manifest hardship and injustice to plaintiff, if any, as to the method of payment of compensation, if any, will be avoided by payment of $650.00 thereof in cash and the balance in weekly installments of $9.69 each?"

This requested issue was followed by an issue requesting the jury to find whether manifest hardship and injustice to plaintiff would not be avoided by the payment of $650 in cash and the balance in weekly installments of $16.15, with certain legal discounts.

The court submitted to the jury special issue No. 11, which reads: "Do you find from a preponderance of the evidence that the payment of compensation, if any, to plaintiff by defendant in weekly installments instead of a lump sum will result in manifest hardship and injustice to the said plaintiff", to which the jury answered, "We do".

Lump sum settlements are provided for in compensation cases under Section 15 of Article 8306, Revised Statutes of 1925. The part of this article material to this appeal reads: "In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. *This section shall be construed as excluding any other character of lump sum settlement except as herein specified.* [Italics ours.] * * *"

Section 15a of said Article 8306 reads: "In any case where compensation is payable weekly at a definite sum and for a definite period, and it appears to the board that the amount of compensation being paid is inadequate to meet the necessities of the employe or beneficiary, the board shall have the power to increase the amount of compensation by correspondingly decreasing the number of weeks for which the same is to be paid allowing discount for present payment at legal rate of interest; provided that in no case shall the amount to which it is increased exceed the amount of the average weekly wages upon which the compensation is based; provided it is not intended hereby to prevent lump sum settlement when approved by the board."

Since there is nothing in either of the above articles which provides that the liability of the insurer may be redeemed by the payment of a portion of the compensation in a small lump sum and the balance in weekly installments, as indicated in above requested issues, we think that the insurer is limited to redemption of its liability in a lump sum where it is found that manifest hardship and injustice would otherwise result from the payment of compensation in weekly installments. We are strengthened in this belief by the fact that the only other method for increasing the amount of the payments of compensation is that which the legislature has seen fit to provide by the terms of Section 15a of Article 8306, which provides that the amount of compensation may be increased by correspondingly decreasing the number of weeks for which the same is to be paid, by allowing a discount for the present payment at the legal rate of interest.

For the reasons above stated, the judgment of the trial court is in all things affirmed.

Affirmed.