**FEDERAL UNDERWRITERS EXCHANGE v. POLSON.**

**No. 2102.**

Court of Civil Appeals of Texas. Eastland.

Feb. 7, 1941.

Rehearing Denied March 7, 1941.

that, such exertion placed a strain upon his heart, injuring it and causing it to give way, whereby he suffered a heart stroke that caused his death on August 9, 1939.

In response to special issues submitted to them the jury found, among other things, that: (1) On January 9, 1939 Joseph Elmore Polson sustained an injury to his heart; (1a) that such injury was sustained in pulling the lever on the boomer; (2) that said injury was an accidental injury; (3) that such injury was received in the course of his employment with the Lincoln Tank Company; (4) that such injury was a producing cause of Polson's death; (5) that Polson's death was not caused solely by an existing diseased condition independent of an accidental injury sustained on January 9, 1939; (6) that Polson had not worked in the same or similar employment for substantially a year immediately preceding January 9, 1939; (7) that there were no employees of the same class as Polson who worked substantially the whole of the year immediately preceding said date in the same or similar employment in Howard County, or in neighboring places; (8) that the average daily wage of Polson that would be fair and just to both parties was $5; (14) that Polson did not recover from the cardiac failure of the heart of January 9, 1939; (15) that Polson would not have died if he had not received the accidental injury on January 9, 1939.

Judgment was rendered on the verdict for plaintiff and defendant has appealed.

As heretofore shown, the jury found, in answer to issues 1, 1a, 2, 3, 4, 5, 14 and 15, that Polson sustained an injury to his heart on January 9, 1939; that such injury was sustained in pulling the lever on a boomer; that the injury was an accidental injury; that such injury was received in the course of his employment with Lincoln Tank Company; that said injury was a producing cause of Polson's death; that Polson's death was not caused solely by an existing diseased condition independent of plaintiff's accidental injury sustained on January 9, 1939; that Polson did not recover from the cardiac failure of the heart of January 9, 1939; that Polson would not have died if he had not received the accidental injury of January 9, 1939.

By its first ten propositions, defendant contends that the evidence was insufficient to sustain the answers of the jury to said issues. It is particularly urged by

Lightfoot, Robertson & Gano, of Fort Worth, and Coffee & Coffee, of Big Spring, for appellant.

Martelle McDonald and Brooks & Little, all of Big Spring, for appellee.

GRISSOM, Justice.

Pairlee Polson instituted this suit against Federal Underwriters Exchange, the employer's insurance carrier, to recover compensation under the Workmen's Compensation Act, Rev.St.1925, art. 8306 et seq., on account of the death of her husband on August 9, 1939. She alleged his death was the result of an accidental injury received by him on January 9, 1939, while in the course of his employment with the Lincoln Tank Company. Plaintiff alleged that on January 9, 1939, while in the regular course of his employment with the Lincoln Tank Company, her husband tugged with the lever of a boomer fastening down a chain upon the truck of his employer and in doing so received an accidental injury, in

defendant that the evidence is insufficient to authorize the finding that the deceased employee suffered an accidental injury on January 9, 1939 in the course of his employment with the Lincoln Tank Company, or that the injury of said date, if any, was a contributing cause of the plaintiff's death in August, 1939. Defendant insists the evidence shows that on January 9, 1939 Polson was suffering with high-blood pressure and a diseased heart, and that his death in August 1939 was caused by such disease, or a stroke occurring shortly before his death, and at a time when he was not employed by the Lincoln Tank Company. In support of its contention defendant, although citing many authorities, apparently relies largely upon the decisions in Texas Pacific Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, by this court, and Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200. With reference to the Hall case it is urged that the evidence in the instant case does not justify an inference that Polson's condition after pulling the lever that unfastened the boomer on the lumber truck on January 9, 1939 was caused by an accidental injury in preference to an inference that such condition was caused by a pre-existing disease.

Mr. Couch, a fellow employee of deceased and an eyewitness to the alleged accidental injury of Polson, testified, in substance, that he and Polson went together in a truck on the morning of January 9, 1939, to the railroad yards for the purpose of unloading and hauling lumber for the Lincoln Tank Company; that when they got there another truck had already been spotted for the same purpose; that preparations were made to load this truck which had been driven there by a Lincoln employee by the name of Taylor; that the Taylor truck was equipped with a two-wheel trailer which consisted merely of a frame without a body; that a bolster set over the rear wheels crossways with them; that the bolster was a piece of timber about 6x8 tapering from the center. The purpose of the bolster was to serve as a rest for the lumber. In order to prevent this bolster from wobbling around when the truck was empty it had been chained or "boomed down." The bolster was fastened down by a chain that ran under the tongue and was then fastened and held tight by a boomer. The boomer was a "contraption" with a lever arranged so that when the boomer was pulled shut the chain was drawn up and the tension was put on it, the tension being maintained by the boomer. The lever was about 2 or 2½ feet long. Polson went over to unfasten the boomer. The chain was tight. A pull or jerk on the lever was necessary to open the boomer. Polson took hold of the boomer; after he opened it, he turned it loose. The witness Couch was standing within about 3 feet of Polson waiting to catch the chain after Polson released the boomer and unhooked the chain as Polson would then ordinarily have tossed the chain to him. Couch glanced away momentarily at a passing train; he did not receive the chain as he expected, and four to ten seconds after the boomer opened he noticed Polson leaning over the frame of the trailer in a peculiar manner and apparently saying or trying to say something to him. He stepped around the wheels to Polson, and Polson said "Hold me, I'm falling." Couch placed his arms under Polson's arms and Polson's knees seemed to give way. Couch and Taylor then assisted Polson into a truck. At noon Polson was taken home. Couch further testified that from his past experience he would say the boomer was fairly tight on the occasion in question, that it took quite a bit of pull or jerk to release a boomer of this kind. That the boomer could be released by throwing the weight of his body against it, or by a jerk. That he saw Polson take hold of the lever on the boomer a few seconds before he noticed Polson in the condition mentioned. That he saw Polson start to pull the lever. That when he saw Polson leaning against the truck and apparently trying to call for help the lever on the boomer had been pulled back and the tension on the chain relaxed.

Mrs. Polson testified they were married in 1923; that Polson had worked for the Lincoln Tank Company since they were married except for about two years; that on the morning of January 9, 1939 he looked and acted as usual. That she saw him when he came in at noon; that he couldn't walk good, didn't seem like himself, that he had never been in that condition before; that she saw he needed a doctor and immediately took him to Dr. Hogan. Her effort to state what her husband told her as to the cause of his condition was prevented by an objection to such testimony. (It is here referred to only because defendant stresses the fact that Mr. Polson did not give a history of an accident to Dr. Hogan.) Mrs. Polson further testified that during the year preceding

January 9, 1939, Mr. Polson worked about 200 days for the Lincoln Tank Company, averaging about 8 hours work per day; that his job was that of a tank setter and was irregular and intermittent in its nature. In this connection, we call attention to the fact that the evidence discloses that this was approximately the maximum amount of work that could be done by a person in such employment. Mrs. Polson further testified that Polson had never had a stroke or "give way" prior to January 9, 1939; that Polson was advised in 1932 that he had high blood pressure and should go to a lower climate; that he went to the Rio Grande Valley for about two months, that he was able to pick cotton on the return trip from the Valley; that he had erysipelas in 1937 which probably caused him to lose one or two weeks' work; that he had no serious illness until January 9, 1939. That prior thereto he worked when there was a job to be done, and ate and slept normally right up to the morning of January 9, 1939. That when she brought Polson back from Dr. Hogan's office on the day of the accident he stayed in bed six weeks; that after that he didn't do anything but sit around the house. That when warm weather arrived he got out of the house some, worked two or three days for the Lincoln Tank Company, that this work consisted of painting an office and in telling the boys in the bolt-house what to do, that this work was supervision work, and he did no lifting. That this work for the Lincoln Tank Company was about the 1st of July, 1939; that the only other work he did from the date of the injury on January 9, 1939 to the date of his death in August, 1939, was 1½ days work caulking tanks for a refinery about the last of June, 1939. That after the visit to Dr. Hogan's office on January 9, Dr. Hogan made visits to Polson's home until Mr. Polson was able to go to Dr. Hogan's office. That Mr. Polson took the medicine Dr. Hogan prescribed for him "all the time." That immediately prior to Polson's death on August 9 he had been confined to his bed one day, that he had not been doing any kind of work immediately prior thereto; that he had just been sitting around the house for several days or weeks; had not seemed to have any particular difficulty, but was just weak and sat around. Mr. Polson was 63 years old at the time of his death.

Dr. Brown testified in response to a hypothetical question that in his opinion Polson had a diseased heart and in exerting himself in pulling on the lever on January 9 he suffered an acute heart attack, bringing on a break in the compensation of his heart, from which he did not recover. That by a break in the compensation of the heart he meant that even though a person has a heart disease, if he is still able to go about his regular duties and perform his regular work, that is referred to as a heart that is compensating; that when something goes wrong with the heart so that he can no longer perform his duties, that is spoken of as a break in compensation. That until the break in compensation the heart is considered as a good heart, but when the break in compensation occurs and he can no longer follow his occupation, then he has a bad heart. That in his opinion Polson had a diseased heart, that the exertion caused some dilatation and caused something to go wrong with his heart, probably a letting-go of the heart muscles that caused the break in compensation. That in his opinion Polson's condition was caused by this break in compensation and was the result of the occurrence of January 9; that in his opinion Polson had a heart attack while pulling on the lever. That Polson's death was a gradual process, dating back to January 9, 1939; that the seven months intervening before Polson's death was a lingering illness; that the incident occurring on January 9 was the producing cause of Polson's death. That if Polson suffered a stroke just prior to his death "it was part of the same picture." That the jerking on the lever precipitated Polson's heart attack; that such exertion caused a strain which caused his heart "to let-go." This statement of Dr. Brown is supported by the testimony of defendant's witness, Dr. Bennett, to the effect that in his opinion the pulling on the lever "most likely" caused Polson's heart attack on January 9.

In Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581, 582, the Supreme Court, in an opinion by Justice Critz, reversed the judgment of the Court of Civil Appeals, 94 S.W.2d 1221, holding that there was no evidence of probative force tending to show that Vera Carter sustained an injury to the blood vessels of her brain in the course of her employment. In that case no one saw Carter sustain an accidental injury. No specific date of such an injury was fixed. The evidence showed that she was a maid in a hotel, that for about a week before she quit work she would complain of pains in her head and would

have to lie down and rest. These pains would appear after she had been working in hot rooms and lifting heavy articles; that during one of these spells she was sent home and from there to the hospital where she died about 30 days later. That before she began having these spells with her head she was in fairly good health; that she had high blood pressure and "may have had other physical ailments." There was medical testimony to the effect that the symptoms detailed evidenced a possibility of cerebral hemorrhage. That such hemorrhage could be caused by heavy lifting. That, assuming such symptoms, it was the doctor's opinion the hemorrhage was due to the straining and lifting incident to Carter's work in the hotel. Relative thereto Justice Critz said: "If this hemorrhage occurred while Vera was at work, and was brought on, produced, or caused by her having to lift and carry heavy loads, and move heavy furniture, we think accidental injury in the course of employment has been established. Southwestern Surety Ins. Co. v. Owens, Tex.Civ.App. 198 S.W. 662, writ refused; Georgia Casualty Co. v. Mixner, Tex.Civ.App. 289 S.W. 420, writ refused. It has been held that strain sustained by an employee in the course of his employment is generally regarded as an accidental injury. This being true, it certainly ought to be held that a ruptured blood vessel brought on, produced, or caused by heavy lifting or moving of heavy objects in the course of employment is an accidental injury."

The judgment of both the Court of Civil Appeals and the District Court were reversed and judgment was rendered for the plaintiff, the surviving husband of Vera Carter.

In Texas Employers' Ins. Ass'n v. Lovett, Tex.Civ.App., 19 S.W.2d 397, 399, writ refused, it was contended that the evidence did not show an accidental injury within the course of Lovett's employment. Lovett was the employee of a gin company. For several years prior to his death he was afflicted with an organic heart disease, known as angina pectoris. On October 4, 1937, the deceased employee tried to help get the wagon of a customer who had a bale of cotton to be ginned over the seed box by taking hold of a rear wheel and rolling the wagon. Failing in this, he went to the front of the wagon and pulled down on the tongue. The mules shied and jerked deceased to one side. Deceased went to his office nearby. About two minutes thereafter, the customer saw deceased wiping his forehead and complaining of a pain in his chest. Deceased then went to a store, took some soda and said that he had a recurrence of his old indigestion. Later he stated to others that he had a pain in his chest that might be caused by dust from the gin. He was taken home and died within two or three hours after helping with the wagon. He was 49 years of age, and had been in apparent good health and without pain until after he had exerted himself by helping get the wagon in place. Expert witnesses testified in answer to hypothetical questions that in their opinion deceased died of angina pectoris, precipitated by over exertion in helping with the wagon. One doctor testified "it shows that the violence he was subjected to was the straw that made the break." Another testified "I think the attack was precipitated or brought on by the exertion, and, while sort of indirect, it was just as real as if he had been hit on the side of the head; it would have an effect on his heart."

The Court of Civil Appeals held that such evidence authorized the finding of the jury that Lovett died as the result of an accidental injury received in the course of his employment. The Supreme Court refused a writ of error. It should be noted that Lovett gave no history of an injury but referred to, and evidently attributed, his pain to a recurrence of his "old indigestion."

As fully sustaining the action of the trial court in the particulars now under investigation, we cite: Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354; Hurd v. Republic Underwriters, Tex.Civ.App., 105 S.W.2d 428; Texas Employers Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787; Consolidated Underwriters v. Christal, Tex.Civ.App., 135 S.W.2d 127, 130, writ refused; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 144 S.W.2d 626, 629, writ refused; Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W. 2d 1026; Texas Employers Ins. Ass'n v. Wright, Tex.Civ.App., 118 S.W.2d 433.

We think that neither the Hall case, nor the Burnett case are controlling here. They hold that proof of lowered resistance of an employee due to an injury is insufficient to authorize recovery under the Workmen's Compensation Act where the proof does not go further and show a causal connection between the lowered re-

sistance and the death of an employee. In the Hall case the injury was alleged to have been sustained in August, 1929, and was alleged to have been a producing cause of Hall's death in November, 1934. It was contended there was no evidence that the injury contributed to Hall's death. The evidence showed without dispute that the immediate cause of Hall's death was pneumonia. There was evidence that Hall's injury contributed to cause a physical condition which rendered him more than ordinarily susceptible to pneumonia. We held that such proof was insufficient to show that the physical condition was the cause of pneumonia. In that case, there was not even opinion evidence that Hall's condition of susceptibility was the cause of his pneumonia. The plaintiff's medical witness refused to so testify. Under such circumstances we held that there was no evidence that Hall's susceptibility to pneumonia by reason of his lowered resistance was in fact the cause of his pneumonia. The evidence in that case certainly is not on a par with the evidence in the instant case. There may be some doubt as to whether or not the evidence as to Polson's accidental injury in the course of his employment for the Lincoln Tank Company should be classified as circumstantial, but, be that as it may, we think the evidence is sufficient to authorize the jury's finding that Polson sustained an accidental injury in the course of his employment. Contrary to the fact situation in the Hall case, here there was evidence from plaintiff's medical witness that in his opinion the strain incident to the jerking or pulling of the lever was the cause of the breaking down of Polson's heart, and contributed to his death in August, 1939. The decision in Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200, 201, may be very clearly distinguished upon the facts of the cases. The facts of that case and in the instant case are not comparable. The question decided in the Burnett case, as stated by Judge German (and as pointed out by us in Traders & General Insurance Company v. Wright, 144 S.W.2d 626, 628, writ refused), was that the beneficiaries of a deceased employee did not have the right to recover compensation for his death "due directly to an independent intervening agency, having no connection with or relation to the original injury, although the injury may have to some extent reduced the power of resistance of the deceased, and in that manner contributed in some degree to his death."

Also, see Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924, writ dismissed; United States Cas. Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465, writ refused.

Defendant's propositions 1 to 10, inclusive, are overruled.

■ With reference to Polson's wage rate the evidence was that Polson had not worked as much as 300 days during the year preceding his injury; that he had only worked approximately 200 days during said period; that he was paid 62½ cents per hour and worked 8 hours per day, making $5 per day. His job was a tank setter and such work was irregular and intermittent in its character. When work of this kind could be obtained he worked seven days per week as long as it lasted. The evidence was further to the effect that no other workmen of the same class in that or in a neighboring community worked for as much as 300 days during the year preceding Polson's injury. That the tank setters in the witness Couch's crew made 75 cents an hour, when that kind of work could be obtained, worked 8 hours a day and made $6 per day. The evidence eliminated Subsections 1 and 2 of Sec. 1, Art. 8309, as applicable to the case. The jury found, under Subsection 3 of said Article, that $5 per day would be a just and fair daily wage, and the judgment was based thereon. Said finding and the action of the court in basing its judgment as to the wage rate thereon are assailed by the defendant in its eleventh to fifteenth propositions, inclusive. The wage rate is assailed as being manifestly unjust and unfair because the employee could not have earned said amount as wages if he had not been injured.

In Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399, 401, the Supreme Court, through an opinion by Judge German, said: "One of the underlying purposes of our compensation statutes is to compensate an injured employee, not merely for loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full-time basis. Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356, 360, writ refused; Traders & Gen. Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S.W.2d 859, writ refused.".

**962**

In Maryland Casualty Co. v. Drummond, 114 S.W.2d 356, 361, writ refused, the Beaumont Court of Civil Appeals, in an opinion by Justice Combs, said: "In considering the matter of fixing just and fair wage another question arises on the record before us, which is, where the injured employee was employed for part time work only is his weekly wage rate to be limited to his capacity to earn in similar part-time employment, or shall it be based on what he could earn by working full time? We think the authorities hereinabove cited have settled the proposition that the wage rate is to be based on the employee's capacity to earn when employed on a full-time basis."

To the same effect are the decisions in Federal Underwriters Exchange v. Woods, Tex.Civ.App., 140 S.W.2d 285, 286; Traders & General Ins. Co. v. O'Quinn, Tex. Civ.App., 111 S.W.2d 859, 861; Texas Employers Ins. Ass'n v. Hamilton, Tex.Civ. App., 95 S.W.2d 767, 771; Maryland Cas. Co. v. Stevens, Tex.Civ.App. 55 S.W.2d 149, 152, writ refused; Traders & Gen. Ins. Co. v. Locklear, Tex.Civ.App., 119 S.W.2d 153, 157.

If Subsections 1 and 2 of Sec. 1 of Art. 8309 are not applicable to the facts of a case so that the employee's average weekly wage may be determined in accordance therewith, and the wage rate is to be determined in accordance with Subsection 3 of Sec. 1, Art. 8309, that is, in such manner as "may seem just and fair to both parties", and if, as stated by the Supreme Court in the Clack case, the purpose of the compensation statutes is to compensate an injured employee "for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full-time basis", then, the trial court did exactly what said statute contemplates. Said propositions are overruled.

We think the hypothetical question propounded to Dr. Brown by the plaintiff was not subject to the objections made. Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955. Defendant's sixteenth proposition is overruled.

The remaining propositions assail the action of the court in refusing to submit issues requested by the defendant. They were immaterial and the related material ultimate issues were submitted. These propositions have been duly considered and are overruled.

The judgment is affirmed.