**ASSOCIATED EMPLOYERS LLOYDS et al.**
**v. GROCE et al.**

No. 13657.

Court of Civil Appeals of Texas. Dallas.

Jan. 11, 1946.

Rehearing Denied Feb. 15, 1946.

104

A. F. (Jack) Nossaman, of Sherman, and Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellant.

O. H. Woodrow, of Sherman, for appellee.

LOONEY, Justice.

This is a compensation case. Helen Louise Groce, as next friend of her husband, John N. Groce, appellee, previously confined in an asylum for insane located at Wichita Falls, appealing from an adverse decision of the Industrial Accident Board, filed suit in the court below complaining of the Associated Employers, Lloyds and its attorney, J. M. Ferguson, the insurance carrier, appellants herein. The Hardwick-Etter Company, a corporation engaged in producing shells for the United States Government for use by the Army and Navy in prosecuting the late war, was the employer.

The suit was based, in substance, on the contention that appellee was injured in the course of his employment with the Hardwick-Etter Company by being assaulted by a fellow-employe, knocked down, his head striking the floor with such force as to produce concussion and laceration, some of the membranes of the brain being disturbed, rendering appellant unconscious for some days, after regaining consciousness was totally and permanently insane and incapacitated to labor and earn money in the future; that appellee's injuries had to do with and originated in the business and work of his employer, were received while appellee was engaged in and about the furtherance of the affairs and business of the employer, and upon its premises where appellee was wont to work and discharge his duties.

Answering appellee's amended petition, appellants either directly denied or declined to concede any of the allegations contained in the pleadings, and affirmatively alleged that the injuries sustained by appellee were not accidentally sustained in the course of his employment with Hardwick-Etter Company, as that term is defined in Art. 8306, Vernon's Ann.Rev.Civ.St.; but were sustained in a physical encounter with a fellow-worker by the name of Waldrum provoked by the willful and unlawful conduct of appellee; and further, that if he is suffering from any disability, which was denied, same was due to other causes and not to an assault by a co-worker as alleged.

At the conclusion of all testimony, the case was submitted on special issues, in response to which the jury found that appellee Groce was injured in the course of his employment; that the same resulted in his total permanent disability; was not caused by his willful intention and attempt to unlawfully injure his fellow-employe; that the difficulty between appellee and his co-worker arose out of and was incident to the work of the employer; was not due solely to the disease from which appellee was suffering at the time, and that the injury received was the exciting and producing cause of appellee's present disability. The jury also found in favor of appellee for a lump sum payment. Based upon these findings, the court rendered judgment in favor of the appellee, from which appellants prosecuted this appeal.

Appellants' points of error, Nos. 1, 2, 3 and 14, will be grouped and considered together because, in our opinion, they present but one general question; that is, that the evidence was wholly insufficient to establish liability or to sustain the findings of the jury on that question. After a careful review and consideration of all pertinent evidence, we have reached the conclusion that the findings of the jury and judgment of the court based thereon, are amply supported by evidence; hence adopt the findings of the jury on the question of liability as our conclusions of fact on the issues.

Although the statement of facts is quite lengthy, we will recite the evidence bearing upon the question of liability, and, at the beginning of this task, are admonished to observe the rule that "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party, and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." The doctrine just quoted is sustained by numerous authorities; among others, Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1; Texas Employers' Ins. Ass'n v. Mask et al., Tex.Civ.App., 180

S.W.2d 369; Traders & General Ins. Co. v. Diebel et al., Tex.Civ.App., 188 S.W.2d 411.

As heretofore stated, both Groce, the injured man, and Waldrum who injured him, were employes of Hardwick-Etter Company of Sherman, Texas, engaged in producing shells for the government to be used by the Army and Navy in prosecuting the late war; these employes worked in the same department or room of the plant where shells otherwise finished were steamed, cleansed by a blower, cooled by being rotated in a cooling apparatus, and then placed upon a conveyor which carried them to a booth for inspection by a government representative. This work was continuous in nature and was conducted by three eight-hour shifts of three men each; the other members of the shift to which Waldrum belonged were Adolph Klosterman and E. L. Cooper—Klosterman being foreman of the shift which took over at 7 a.m. and worked until 3 p.m., when the shift to which Groce belonged and of which he was foreman took over and worked until 11 p.m. Neither Groce nor Waldrum exercised any authority over the other. These employes were required to be on the premises and at the place where they worked at least fifteen to twenty minutes before they were required to begin work; this in order that without delay they would be ready to promptly take over when the time arrived for the preceding shift to withdraw; and it seems it was further contemplated that each shift would dispose of its work so as to prevent an accumulation of unfinished work to be taken over and performed by the succeeding shift. There was also maintained in this department a place or service called the hospital, where defective shells were corrected and after being corrected were placed in a buggy, rolled out and placed conveniently to be steamed, cooled, etc., and sent to the booth for inspection.

On July 6, 1944, as was his duty, Groce came upon the premises and to the place where he worked fifteen or twenty minutes before 3 p.m., when the shift he supervised was to begin work, and finding in the hospital about 40 shells in the buggy brought them out to be worked when the shift of which he was supervisor would take over in a few minutes. It seems that he was somewhat angered because the shift then at work had permitted these shells to accumulate, accused them of loitering on the job, stating that they should have cleaned up the work before checking out. The testimony shows that Groce uttered a stinging rebuke to members of the shift which included Klosterman, Waldrum and Cooper, using profanity and also, as some of the witnesses stated, obscenity of a nature calculated to arouse anger and resentment. Although Groce addressed these remarks to Waldrum who was working at the cooler, they involved the entire shift and were heard by Klosterman, supervisor, who was standing nearby. Waldrum testified that he made no reply whatever to the severe remarks of Groce; however, on this point he was sharply contradicted by Klosterman who, on being questioned, testified:

"Q. Did Waldrum say anything back to him? A. Waldrum asked him if he wanted—who he was, if he wanted to take charge.

"Q. What did he (Groce) say? A. He said 'No, it wasn't time for him to go to work.' He (Waldrum) says: 'All right then, we are running this shift, just leave this alone.'

"Q. So what happened? A. So I just immediately stepped 'in and just touched Waldrum on the shoulder and said 'Forget it; let's forget the whole deal.' I says 'I know the situation of the case.' * * *

"Q. Was anything else done? A. Not a thing was done right then, but Mr. Waldrum stated that he didn't like the way he (Groce) started. I said 'You heard me, let's forget it.' And I went on about my duties presuming everything was settled."

The record fails to disclose that anything out of the ordinary happened the next day between Groce and the other employees, but two days later on the 8th of July Groce came in about fifteen or twenty minutes before 3 o'clock and, without saying a word to anyone, went over to the cooler where Waldrum was at work, picked up a shell (whether hot or cold, evidence confusing, but we think immaterial)

and was in the act of placing it upon the conveyor to be carried to the government booth for inspection when Waldrum interfered and forcibly took the shell away from Groce; Waldrum testified that in so doing he struck and pushed Groce out of the way. Without saying anything or in any manner resenting or retaliating, Groce picked up another shell from the cooler.

At this juncture we interrupt the narrative (to be resumed later) to observe that what Groce said to his co-workers of July 6, of an insulting or offensive nature, and what he did on July 8 in taking shells from the cooler while in charge of Waldrum, in our opinion (and it seems in the opinion of the jury) was said and done to hasten shells to the booth for inspection; and although the conduct of Groce may have been officious and the language employed severe, nevertheless he was on the premises of the employer at the place where he was required to work, and what he said and did was in furtherance and dispatch of the employer's business. Hence we conclude that the jury was authorized by evidence in finding that appellee was injured in the course of his employment; that his injuries had to do with and originated in the work of the employer and were received while engaged in furtherance of the affairs and business of the employer.

As before stated, the work being continuous, it was the duty of Groce as foreman of his shift to be on hand at least fifteen to twenty minutes before change of shifts for the purpose, among other things, of seeing that the work would not be interrupted. If cooled shells were permitted to accumulate in the cooler, continuity of the work would be interrupted; so we think the jury could have believed that when Groce came upon the premises on July 8, discovering or thinking he discovered an undue accumulation of shells in the cooler, without being invited to assist in relieving the situation, voluntarily sought to do so in furtherance of the work. That this was Groce's intention is evidenced by the fact that he placed the first shell taken from the cooler upon the conveyor to be carried to the booth for inspection; but at this juncture Waldrum, being in a belligerent mood, forcibly took the shell away, struck and pushed Groce out of the way.

In Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402, our Supreme Court, among other things, said that the Workmen's Compensation Act should be liberally construed "to effect its remedial purpose and justice." Referring with approval to a decision by the Supreme Court of California, Judson Mfg. Co. v. Industrial Accident Commission, 181 Cal. 300, 184 P. 1, where that court had under consideration a compensation case that arose under the laws of that State, St.1917, p. 834, which made it essential to liability that the employe when injured was "performing service growing out of and incidental to his employment" and was "acting within the course of his employment," the court said: "It seems to us, however, that when an employé has arrived at the premises of his employer, and is thereon for the purpose of immediately commencing his actual work, he is performing service incidental to his employment"; and in American Mutual Liability Ins. Co. v. B. F. Parker et ux., Tex.Sup., 191 S.W.2d 844, 847 (not yet reported [in State report]), the doctrine just announced was reiterated by Judge Hickman with full citation of authorities. Chief Justice Alexander, although concurring in the decision, was not in accord with all that was said in the majority opinion; however, in the course of his opinion reiterated the ruling doctrine very clearly. He said: "If the deceased, who was regularly employed by the Lone Star Defense Corporation, went upon the premises for the purpose of performing his regular duties for said employer and was injured while thus on the premises, as the evidence seems to indicate, then he was injured in the course of his employment within the meaning of the Workmen's Compensation Law * * *, and the insurance carrier is liable, even though he did not actually go to work after entering the premises. He would be entitled to be protected while on the premises." See Employers, etc., Corp., Ltd. v. Light, Tex.Civ. App., 275 S.W. 685, writ ref.

So we conclude that, in view of the evidence and applicable doctrine announced by our Supreme Court, Groce was injured in the course of his employment within the meaning of the Workmen's Compensation Law and is entitled to recover unless it be said that the injury received is not compensable for reasons which will now be discussed.

Appellants contend that appellee's injuries are not compensable, in that they were caused by appellee's willful intention and attempt to unlawfully injure Waldrum, a fellow-worker. Appellants rely on sec. 1, second subd. 4, Art. 8309 of the Workmen's Compensation Act, which insofar as pertinent reads: "The term 'injury sustained in the course of employment,' as used in this law, shall not include * * * 4. An injury caused by the employé's willful intention and attempt * * * to unlawfully injure some other person * * *"; and further, in support of their contention, appellants cite Federal Underwriters Exchange v. Samuel, 138 Tex. 444, 160 S.W.2d 61, by our Supreme Court. As heretofore stated, the jury found in answer to special issue No. 2 that appellee's injuries were not caused by his willful intention and attempt to unlawfully injure Waldrum.

We will now resume the narrative and review the testimony bearing upon the defense just stated, in order to determine whether the finding of the jury is supported by any credible evidence; if so, the finding was authorized and, under the rule previously announced, we would not be justified in disturbing the jury's verdict.

Waldrum, who struck and injured his co-worker, testified at the trial that on July 8, a short time before 3 p.m., Groce came to the cooler where witness was at work, placed his arm on the shelf upon which the motor that operated the cooler was placed, and blew his breath in the face of witness. The implication is clear that Groce did this in a defiant and insulting manner; however, Klosterman, who witnessed the entire transaction, testified that at the time both Groce and Waldrum were in a stooping position and "they couldn't help but blow their breath in each other's face." Thus the incident may be understood without imputing to Groce any discourtesy or desire to insult Waldrum. Waldrum then testified first that Groce took a shell from the cooler and started to place it upon the conveyor which would have carried it to the booth where inspection was had. Waldrum had previously testified by deposition that he forcibly took the shell away from Groce and in doing so struck and pushed him (Groce) out of the way. Following this, Waldrum said Groce took another shell from the cooler, was in a bending position and came towards witness holding the shell in both hands about two inches above his shoulders, in a threatening manner; at this juncture witness said: "I caught him with my left arm under the chin and raised him as fast as I could to overbalance him to keep him from hitting me with the shell, and struck him" in the face around his eyes and that he fell; said the shell weighed about thirteen pounds; and that throughout the episode Groce said nothing. Waldrum had left the service of Hardwick-Etter Company and at time of the trial was working at Amarillo some 300 miles distant from Sherman; voluntarily left his employment there and returned to Sherman to testify for appellants; said that appellants will pay his expenses and for lost time; that he realized he might be prosecuted for a felony if it appeared that he assaulted Groce without cause or justification.

Klosterman, among other things, testified that after Waldrum took the first shell away from Groce, Groce took from the cooler another shell; at first the witness said Groce held the shell menacingly in his right hand, but in another connection testified that Groce held the shell in both hands; and that Waldrum raised his arm, placed it under Groce's chin, raised him up and struck him; that Groce was caught off balance and hit the floor; the impact jarred the shell, which he held, loose from his hands and it struck him on the side of the head. The witness being asked to reconcile his conflicting statements, answered: "I mean so far as that goes that I have forgotten about this whole case."

J. D. Robertson, also an employe of Hardwick-Etter Company, testified at the

trial that just before Waldrum struck Groce they were standing close together, both apparently angry, Groce holding in his upraised arms a shell poised as if to strike. However, there was in evidence a written statement by witness Robertson made to the insurance carrier two days after Groce was injured. In this statement to and for use by the insurance carrier, witness did not say or intimate that Groce held the shell menacingly or poised as if to strike, but simply said: "I noticed these two men standing face to face—John Groce holding a shell up in his hands about shoulder level. Both Groce and Arthur Waldrum looked mad at one another. About the same time that I saw them in this position Arthur struck John in the head with his right fist. John fell backwards landing on the floor. In landing backwards he hit the floor with his head first and he lay*ed* there motionless * * *." Robertson admitted that he had been involved in a school row; that he sought the appointment of his sister as teacher and that Groce's father, a member of the board of trustees of the school, opposed and successfully defeated witness's efforts to secure the appointment of his sister, although witness disclaimed being prejudiced against Groce by reason of that fact; yet, in view of the material variance between witness's written statement made to the insurance carrier two days after the altercation, and his testimony at the trial, the jury could have believed that probably the witness was prejudiced.

However, testimony of these witnesses to the effect that at the time Groce was struck he was brandishing a shell, threatening to strike Waldrum, was flatly contradicted by Mrs. Ann McDuffey. Mrs. Mc-Duffey had been in the service of Hardwick-Etter Company about three weeks prior to the incident under consideration; was on the premises to resume her duties at 3 p.m.; knew nothing of any difficulty between Groce and Waldrum; knew neither of these parties; was without bias or prejudice; had been in the ladies' restroom and, emerging therefrom, saw the men standing facing each other just as the lick was struck that felled Groce. She was asked and answered as follows:

"Q. Tell me what you saw? * * * A. Well I came out of the restroom door. The ladies' washroom. The two men were in front of me. The lick was hit and the man fell, and his head hit the floor awfully hard * * *.

"Q. Did you see him after he hit the floor? A. Yes, sir, he lay there.

"Q. About how long did he *lay* there? A. I don't know. I went to the little office there by us * * *. And I fainted * * *."

On cross-examination this witness denied that she saw a shell in the hands of Groce that fell to the floor; denied that she saw any shell at all. After the cross-examination, on re-direct the witness was asked and answered: "Q. What if anything did John have in his hand when he was struck that you saw? A. He didn't have anything in his hands when I saw him."

 The statement of the evidence just concluded, in our opinion contains all the material facts bearing upon the issue whether or not the injury sustained by Groce was caused by his willful intention and attempt to unlawfully injure Waldrum, his fellow-employee. The jury having answered in the negative, and it being their function to reconcile conflicting evidence, judge as to credibility of witnesses and weight to be given their testimony, if the record reveals any credible evidence authorizing the verdict, although opposed by evidence to the contrary, it would be our plain duty to sustain the verdict and overrule the attacks made upon it by appellants.

Appellants rely upon the testimony of Klosterman, Waldrum and Robertson to sustain the contention that at the time Groce was knocked down and injured he was brandishing a shell weighing about thirteen pounds, as if to strike Waldrum. The jury, in our opinion, could have discounted the testimony of each of the three witnesses mentioned, and especially that of Waldrum who admittedly was conscious that he could be prosecuted for assault to murder if it appeared that he struck Groce without justification. The testimony shows that in order for Groce to have taken a shell from the cooler, he had to bend or assume a stooping position; and although

these witnesses testified that when struck in the face by Waldrum Groce was holding a shell aloft poised as if to strike, yet both Klosterman and Waldrum testified that when Groce picked up the second shell Waldrum placed his left arm under Groce's chin; Klosterman said "raised him up and struck him." Waldrum said "raised him as fast as I could to overbalance him to keep him from hitting me" and then struck him. However, the jury with good reason could have concluded that if it were necessary for Waldrum to raise Groce up in order to strike him in the face, he must have been in a stooping position and not upright holding a shell, poised as if to strike.

The jury also had before them the testimony of Mrs. McDuffey, a disinterested witness, stranger to the parties and to their difficulty until she emerged from the door of the ladies' restroom and saw these men just as the difficulty reached its climax; saw Waldrum strike Groce in the face; saw Groce fall, his head hitting the floor "awfully hard"; saw him lie there, as the evidence says, with blood oozing from his eyes, nose and mouth; being so shocked and horrified at the sight, witness went to her office and fainted. The testimony of this witness alone, in our opinion, was sufficient to justify the jury in its findings.

As will be observed, Mrs. McDuffey's testimony is an unqualified contradiction of the other witnesses who testified that at the time Waldrum struck Groce he (Groce) was holding a shell in his hands in a threatening manner, poised as if to strike Waldrum. As Mrs. McDuffey testified that Groce was not holding a shell when struck by Waldrum, this inquiry is suggested: What became of the shell after Groce took it from the cooler, if he did, and before he was struck? We think the jury could have concluded from the evidence that Waldrum attempted forcibly to take the second shell from Groce just as he did the first, and that in the scuffle the shell fell from Groce's hands to the floor. Although denied by Waldrum, yet the record reveals that the first shell picked up by Groce was forcibly taken from him by Waldrum; Waldrum gave testimony to

such effect, saying that he struck and pushed Groce out of the way. Waldrum and Klosterman both testified that thereupon Groce picked up the second shell from the cooler. If this be true, what became of it before Mrs. McDuffey looked upon the scene, as she denied that Groce held a shell at the time he was struck, and denied having seen a shell anywhere. This particular point has not been discussed, but we think the jury could reasonably have concluded from the evidence that Waldrum attempted forcibly to take the second shell, as he did the first, and that in the scuffle the shell fell from Groce's hands to the floor. Waldrum was asked and answered:

"Q. Well, he took another shell (the second) out of that cooler. A. Yes sir.

"Q. You had just taken a shell away from him, hadn't you? A. Yes sir, and placed it back in the cooler.

"Q. What I mean you had just taken a shell away from him. A. Yes sir.

"Q. He picked up another shell and you turned around to him. A. The second time, yes sir.

"Q. And if he raised that shell at all, wasn't he trying to get away from you after you had attacked him once? A. No sir.

"Q. You weren't going to take it away from him again? A. Yes sir.

"Q. And he wasn't trying to avoid you? A. He was raising the shell in position—".

At pages 17 and 18, appellant's brief, Klosterman's testimony is reproduced as follows:

"Q. Tell the movements you saw Waldrum make. Just go ahead and tell what you saw him do. A. I saw Mr. Waldrum raise his arm and place it underneath Mr. Groce's chin, raising him up and come across and hit him. The next thing I knew—I was standing right there and saw the whole works happen—Mr. Groce was caught off balance and he hit the floor, and also with the impact jarred the shell loose from his own hands striking him on the side of the head.

"Q. Did the shell also strike the leg of Mr. Waldrum? Did it leave a wound on

his right leg? A. He received the wound, but the shell had hit the floor when it struck Mr. Waldrum."

On direct examination Waldrum said that when Groce was struck he fell; no mention was made of the shell in that connection, but on re-direct examination was asked if the shell that Groce was holding hit any part of witness' body. Waldrum answered: "Yes sir, it hit my right leg"; here witness exhibited his leg to the jury, showing the scar that was left. On re-cross examination in regard to the same matter, Waldrum was asked and answered as follows:

"Q. I will ask you this: You have just testified that that shell fell and hit your shin. Haven't you? A. Yes sir.

"Q. And that shell fell after you knocked this man unconscious and it fell out of his hands. He couldn't hold it any more. A. After I had taken and jarred the shell aloose from him.

Q. You mean you took it away from him? A. I overbalanced him and as I struck him the shell came from his hands."

From this maze of conflicting and contradictory evidence we think the jury could well have concluded, and doubtless did, that Waldrum sought to take the second shell away from Groce just as he did the first; that Groce held the shell up to prevent its being taken and in the struggle it fell from his hands, striking Waldrum on the leg, thus accounting for the fact that before Mrs. McDuffey looked upon the scene the shell had fallen from Groce's hands.

We do not think it at all likely that a jury of reasonable men would accept the version of witness Klosterman who testified that when struck Groce hit the floor; that the impact jarred the shell from his hands; that it struck him in the head; later said that after the shell hit the floor it then, in some manner not explained, rebounded and hit the leg of Waldrum. We therefore conclude that the jury was authorized to find as they did; hence overrule the contentions of appellants urged in points 1, 2, 3 and 14.

In Point No. 4 appellants insist that the court committed reversible error in submitting special issue No. 1 as follows: "Do you find from a preponderance of the evidence that plaintiff John N. Groce received an injury on or about July 8, 1944?" to which the jury answered "Yes." Appellants do not contend that the charge was not authorized by the evidence; on the contrary, say the fact that Groce was injured was undisputed and that under the charge, the jury was compelled to answer the issue in favor of appellee, thus giving him a psychological advantage prejudicial to appellants. The objection, in our opinion, is highly technical; whatever error or irregularity was committed in submitting an undisputed fact was harmless. We do not think a case should be reversed and a new trial ordered for a purely nonsubstantial error. See Texas Rules of Civil Procedure, Rule 434, first proviso.

In point No. 5 appellants complain that the court committed error in refusing to give their requested issue No. 1 that would have instructed the jury that the term "injury sustained in the course of employment does not include any injury caused by plaintiff's willful intent and attempt to unlawfully injure his fellow-employe A. J. Waldrum." The record discloses that the court asked the jury the following (special issue No. 2): "Was the injury, if any, that the plaintiff John N. Groce received on or about July 8, 1944, caused by plaintiff John N. Groce's willful intention and attempt to unlawfully injure Arthur J. Waldrum?" to which the jury answered "No." Point No. 5 is overruled; the charge given was in the language of the statute and sufficiently submitted the issue. The controlling doctrine was announced in State National Bank of Houston v. Woodfin, Tex.Civ.App., 146 S.W.2d 284, 287, writ ref., where the court, among other things, said: "It is the well settled law in this state that it is not error for the court to refuse a requested issue which submits in a different form an issue which is covered by the court's charge. Maryland Casualty Co. v. Hill, Tex.Civ.App., 91 S.W.2d 391; Tennessee Dairies v. Seibenhausen, Tex.Civ.App., 99 S.W.2d 323; Arkansas Louisiana Gas Co. v. Max, Tex.Civ.App., 118 S.W.2d 383. The decisions are also uniform in holding

that a party is not entitled to the submission of two or more issues relating to the same ground of recovery or ground of defense. Consolidated Underwriters v. Christal, Tex.Civ.App., 135 S.W.2d 127; Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356."

In Point No. 6, appellants contend that the court erred in giving special issue No. 2, in that the same relieved appellee of the burden cast upon her as a matter of due process of law and placed same upon appellants. We do not think so. Special issue No. 2 is set out above, except the concluding line which reads: "A negative answer requires a preponderance of the evidence." This, in our opinion, properly placed the burden of proof upon the appellee.

In Point No. 7 appellants contend that the court erred in giving special issue No. 5 which reads: "Do you find from a preponderance of the evidence that the difficulty, if any, between the plaintiff, John N. Groce and his co-employe, Arthur J. Waldrum, on the occasion in question arose out of or incident to the work of the employer, Hardwick-Etter Company?" to which the jury answered "Yes." The objections urged by appellants to this charge, in substance, are that the charge is too broad, too general, and too indefinite, and does not limit the inquiry to whether Groce's incapacity was sustained in the course of his employment and while he was working on duty, and further because the word "controversy" inquired about in the court's charge in this issue is erroneous and should be "fight" or "difficulty" or "altercation," insisting that the indisputed evidence shows that there was no controversy between plaintiff and Waldrum, in that. they had no words, no argument, etc. Obviously, appellants are in error; special charge No. 5 set out above employs the word "difficulty" and not "controversy" as contended, and although we do not think it a matter of any materiality which term was used, yet as a matter of fact "controversy" was not used in the court's charge. In other respects we think the charge was unobjectionable, hence the point is overruled.

In point No. 8 appellants contend that the court erred in failing to submit an instruction embodying a definition of "due course of employment" as that term is defined in Art. 8309, R.S. Special issue No. 6 given by the court to the jury, in our opinion is a complete answer to this criticism, and the point is overruled.

In point No. 9 appellants complain that the court erred in refusing to give their specially requested issue No. 2 which reads: "Do you find from a preponderance of the evidence that plaintiff Groce was working in the furtherance of his employer's business at the time he was injured by being struck by his co-employe Arthur J. Waldrum?" This point is overruled; issues No. 5 and 6 given by the court, we think constitute a complete answer to the point under consideration. In the fifth special issue the jury was asked to find whether on the occasion in question the difficulty between plaintiff and his co-employe Waldrum arose out of or incident to the work of the employer; and in special issue No. 6 was requested to answer from a preponderance of the evidence if plaintiff received the injury sustained in the course of his employment, and for the jury's guidance defined "injuries sustained in the course of employment" within the meaning of the law; also defined the term "employment" as used in the charge. The requested issue No. 2 would have submitted in a different form the same subject matter.

In point No. 10 appellants complain that the court erred in refusing their specially requested issue No. 4 which reads as follows: Do you find from a preponderance of the evidence that the difficulty between plaintiff Groce and Waldrum on July 8, 1944, in question, plaintiff was the aggressor in such difficulty?" We do not think the court erred in refusing this requested instruction, because, in the first place, it would have required a finding evidentiary in character, the court in special issue No. 6 having correctly submitted the ultimate fact issue.

In point No. 11 appellants complain that the opening argument of counsel for appellee was so utterly improper and un-

warranted in so many respects that the failure of the court to rebuke counsel and instruct the jury to disregard his improper and unwarranted remarks denied appellants a fair and impartial trial. It is stated in the brief that this point is based upon assignments Nos. 65 to 84, nineteen distinct assignments. The brief failed utterly to set out in condensed form or otherwise a fair and concise statement of the facts pertinent to such point, as required by Rule 418, but in lieu states: "We assume that this court will read the specific portions of opening argument of counsel to which we refer in our multiple assignments." These multiple assignments simply refer the court to certain pages of the statement of facts wherein the language objected to may be found. It seems that the opening argument of counsel for appellee was taken in shorthand in its entirety, was not replied to by counsel for appellants, as they submitted the case to the jury without argument; and in point No. 12 appellants complain of the error of the court in overruling their motion to instruct the jury "to disregard the unwarranted argument of counsel for appellee," referring to the page of the statement of facts where the motion may be found. The point is based upon assignment 87 stating that counsel discussed many matters not warranted by evidence, allegedly so prejudicial as to deny appellants due process of law. Again appellants in their brief failed to include either in condensed form or otherwise a statement of the facts pertinent to the point, but simply referred the court to certain pages of the statement of facts. We do not think the rule of briefing was complied with. We are not required to make an excursion into the statement of facts to ascertain whether or not and in what respects the argument of counsel was objectionable and prejudicial. However, we took time off to read the argument in its entirety and find nothing materially objectionable. Counsel seems to have based his argument on the facts and legitimate inferences such as one arguing the case would draw from the facts. We therefore overrule points, Nos. 11 and 12, relating to argument of counsel.

In point No. 13 it is contended that the trial court erred in overruling appellants' motion to declare a mistrial on account of the alleged conduct or misconduct of Mrs. Groce while on the witness stand. The motion in question is not set forth in the brief, nor is a condensed statement made of it; but reference is made to the page of the statement of facts where the motion may be found. The examination of Mrs. Groce appears to have been in the usual and ordinary form of question and answer, and nothing of an emotional or inflammatory nature is apparent from this record. It seems that in the course of her examination, when she reached the point of describing her husband's plight when she first saw him after the injury, that she wept—which she admitted on voir dire examination apart from the jury. This seems to be the head and front of the contention that her conduct in the presence of the jury was highly emotional, inflammatory and prejudicial.

 We do not think appellants complied with briefing Rule 418 in presenting this point of error, in that no condensed statement of the facts pertinent thereto is given in the brief. We are simply referred to the statement of facts to ascertain what occurred before the jury; and, even then, only by imagination do we understand that doubtless Mrs. Groce, caused by questioning to live over again the experiences of that fateful day when separated from her husband just a short time before he was to go to work, was summoned to his side in the hospital where he lay unconscious and bleeding, naturally under the circumstances she wept, and, in our opinion, no one should deem her conduct out of the ordinary for so doing.

We have laboriously considered each point of error urged by appellants and, finding no reversible error, the judgment of the court below is affirmed.